# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

ON APPEAL FROM THE COURT OF CHANCERY.

JUNE TERM, 1900.

———————————

HERMAN WALKER et al., complainants, respondents,

*v.*

SAMUEL E. RENNER, defendant, appellant.

[Filed June 19th, 1900.]

Complainants, owners of a tract of land situate at the top of the Palisades, in the county of Hudson, desiring to establish an attractive neighborhood for residences, caused a map of the property to be made, entitled "Map of El Dorado, Weehawken, Hudson County, N. J.," which was filed in the office of the register of Hudson county. This map showed that the tract of land was laid out in streets, with lots designated thereon. Among the lots so designated more than one hundred were marked as lots twenty-five feet front and rear, and one hundred and five feet in depth. With a view to sales, complainants had a deed prepared and printed in blank, which contained certain building restrictions, among which is the following: "And the party of the second part doth hereby further covenant and agree to and with the parties of the first part, their heirs and assigns, for and in behalf of himself, his heirs and assigns, that

493

the lot [with a blank left for the letter *s*] hereby to be conveyed *is* not to be *subdivided*, and that no more than one residence is to be erected *upon the same.*" By deed dated September 12th, 1895, complainants conveyed to one G. lots 13 and 14. They are described as lots 13 and 14 on the map, without any further description. The deed contained the restriction above quoted, with the letter *s* after *lot*. G. conveyed to the defendant, Renner, who commenced to erect a dwelling on each of said lots. This bill was filed to enjoin the erection of more than one building on the two lots.—*Held*, (1) that the division of the tract of land into lots twenty-five by one hundred feet, made by the complainants in their original scheme of improvement, contemplated the use of each lot twenty-five by one hundred feet for a single dwelling. Taking the restriction in the deed now in question in connection with the plan of improvement adopted by the complainants, the restrictive clause in the deed should be applied only where the purpose of the grantee is to subdivide the lots conveyed into lots less in size than designated on the map, and the words "no more than one residence is to be erected upon the same" apply to each one of the lots conveyed by this deed, and not to both the lots as one tract; (2) all restrictions upon the use of land conveyed in fee which restrain the grantee from exercising the rights of an owner are strictly construed.

On appeal from an order granting an injunction advised by Vice-Chancellor Pitney, who delivered the following opinion:

I think the question raised here is of considerable importance and should be disposed of promptly, and if I take the case home it may be some time before I can take it up for consideration. I have had an opportunity to think of it while the counsel were proceeding with the argument, and I will therefore dispose of it at once.

The bill is filed by Mr. Walker as the owner of several lots— over one hundred lots—on the Palisades, overlooking the Hudson river, comprising a suburb called El Dorado. The property was bought by Mr. Walker at master's sale, and either then or afterwards he procured it to be laid out in lots. And for the purpose of selling them at retail he had a deed prepared and printed in blank, which contained certain building restrictions, and among others, one important for present purposes is this:

"And the party of the second part doth hereby further covenant and agree to and with the parties of the first part, their heirs and assigns, for and in behalf of himself, his heirs and assigns, that the lot [there is a blank left for the letter "s"] hereby conveyed is not to be subdivided, and that no more than one residence is to be erected upon the same."

Walker *v.* Renner.

There are four lots in El Dorado adjoining each other, facing on Hudson Place, namely, lots 13, 14, 15 and 16. Lots 15 and 16 were conveyed by Mr. Walker, the complainant, to one Frederick Gamm, by deed dated September 12th, 1895, which described lots 15 and 16 by numbers, referring to the map. In this deed, in the clause which I have already read, the word "lot" is left standing without any sign of plurality inserted— the letter "s" was not inserted. I have the original deed before me. And under that deed Mr. Gamm erected a single dwelling on lots 15 and 16, treating them as one lot. Subsequently, on March 27th, 1896—six months later—the complainant conveyed to the same Frederick Gamm lots 13 and 14, adjoining lots 15 and 16 on the east, and fronting on the same street They are described as lots 13 and 14 on the map, without any further description. Then the deed, which is the same blank precisely— printed blank—contains the same language as the previous one to Gamm did, except that the letter "s" is put in after "lot." The language is that

"the party of the second part [that is, Gamm] hereby further covenants and agrees to and with the said parties of the first part for and in behalf of himself, that the lots hereby conveyed *is* not to be subdivided, and that no more than one residence is to be erected *upon the same.*"

Mr. Gamm subsequently, in September of this year, conveyed these lots to the defendant in this cause, Mr. Renner. Mr. Renner commenced to erect two dwellings on the two lots, one on each; each lot being twenty-five feet front and a hundred and odd feet deep. As soon as it appeared from the work on the ground that he intended to erect two houses, Mr. Walker interposed his bill of complaint, and obtained a restraining order. There is no charge that Mr. Walker has been in laches at all, that he did not promptly proceed to interfere by notice and by bill. The defendant comes in with affidavits in answer, and sets up a variety of matters about Mr. Walker's dealing with other lots, which, I think, have nothing to do with the case.

The bill is here filed by Mr. Walker, the original owner and grantor, and the proof shows that he still is the owner of a large number of these lots; and the case is within the authority of

*Coudert* v. *Sayre, 1 Dick. Ch. Rep. 386.* The cases that have given rise to difficulty of solution are those which arose between subsequent purchasers from the original covenantee and involved the question of abandonment or waiver of rights. That question has occupied the attention of the courts of England and of this country, especially in this state in the case of *De Gray* v. *Monmouth Beach,* decided by Vice-Chancellor Green, *5 Dick. Ch. Rep. 329,* and *Trout* v. *Lucas, 9 Dick. Ch. Rep. 361.* This case differs from those in that the bill is here filed by the original grantor, and the considerations influencing the court in the cases just referred to do not apply, certainly not in the same degree. But I find as a matter of fact, after listening to the affidavits and examining the documents which have been presented, that there is nothing that Mr. Walker has done, in my judgment, that at all detracts from his right to insert this clause in the deed to Mr. Gamm, and to insist upon it as against this defendant.

I come down, then, precisely to the point where Mr. Corbin put it—that is, what is the meaning of this clause, and that depends on what is the meaning of the words "the same," the last words that I quoted from the covenant. There were two lots conveyed that are spoken of here in the plural, and it says, "lots hereby conveyed *is* not to be subdivided, and that no more than one residence is to be erected upon the same." Now these blanks were prepared for the conveyance of a single lot, and the difficulty arises out of the fact that two lots were conveyed by numbers. If the language had been a lot fifty feet front and one hundred feet deep, which comprises lots 13 and 14, I think there would have been no difficulty of construction, but the trouble arises out of the fact that they are spoken of in this very clause as "lots," and then it is covenanted that no more than one residence is to be erected *upon the same.* Now, I am not ready to say that the question is not without difficulty, but my opinion is that the construction claimed by the complainant is the true one, and that the restriction prevents the erection of more than one dwelling. The words "the same" refer to the two lots, not to each of the lots. I think that is the better construction.

I therefore pronounce in favor of the complainant, and grant the injunction. I do this thus promptly so that if either party wishes to appeal he will not have any trouble.

*Messrs. Smith & Mabon,* for the appellant.

*Messrs. Corbin & Corbin,* for the respondents.

The opinion of the court was delivered by

DEPUE, CHIEF-JUSTICE.

The bill in this case sets out that the complainants were owners of a tract of land situated at the top of the Palisades, in the county of Hudson; that the complainants, desiring to establish an attractive neighborhood for residences, caused a map of said property to be made, entitled "Map of El Dorado, Weehawken, Hudson County, N. J.," which was filed in the office of the register of Hudson county October 27th, 1895. This map shows that the tract of land was laid out in streets, with lots designated thereon. Among the lots so designated more than one hundred were marked as lots twenty-five feet front and rear and one hundred and five feet in depth. With a view to sales, the complainants had a deed prepared and printed in blank, which contained certain building restrictions, among which is the following:

"And the party of the second part doth hereby further covenant and agree to and with the parties of the first part, their heirs and assigns, for and in behalf of himself, his heirs and assigns, that the lot [with a blank left for the letter *s*] hereby to be conveyed is not to be subdivided, and that no more than one residence is to be erected upon the same."

By a deed dated September 12th, 1895, the complainants conveyed to one Frederick Gamm lots 15 and 16 by numbers, referring to the map. In the deeds for these two lots, in the clause of restriction, the word "lot" is left without any sign of plurality inserted. Under that deed Gamm erected a single dwelling on lots Nos. 15 and 16, treating them as one lot. Subsequently, on March 27th, 1896, the complainants conveyed to

the said Gamm lots 13 and 14, adjoining 15 and 16 on the east, and fronting on the same street. They are described as lots 13 and 14 on the map, without any further description. In the latter deed the language of the restriction is that

"the party of the second part hereby further covenants and agrees to and with the said parties of the first part for and in behalf of himself that the *lots* hereby conveyed *is* not to be *subdivided*, and that no more than one residence is to be erected *upon the same*."

Gamm subsequently conveyed to the defendant, Renner, who commenced to erect a dwelling on each of the said lots. This bill was filed to enjoin the erection of more than one building on the two lots. The court of chancery, on the construction of this deed, granted the injunction prayed for. Hence this appeal.

The controversy in this case arises upon the construction to be given to the clause restricting the use of these lots. Restrictions of this character are valid, and are regarded as for the benefit of the owners of the tract to be improved and made profitable by sales of lots, and also for the advantage of persons who have become purchasers on the faith of the scheme of improvement adopted. Nevertheless, all restrictions upon the use of land conveyed in fee which restrain the grantee from exercising the rights of an owner are strictly construed. The vice-chancellor construes the restriction in the deed now in question for lots numbers 13 and 14 as restraining Gamm and his grantees from erecting more than one building on the two lots. This construction is based on the word "lots" and "upon the same" in the restrictive clause. This construction of the restriction, we think, is not justified.

The scheme of improvement adopted by the complainants, contemplated the sale of lots twenty-five by one hundred feet each, with no restriction on the use for building purposes, except that no more than one residence was to be erected upon each of such lots. This was the scheme of improvement on the faith of which others became purchasers of the lots in this tract of land. Purchasers who bought two lots were at liberty to erect a single dwelling on both lots, but a purchaser taking title for any number of lots was at liberty to erect upon each lot a residence,

Walker *v.* Renner.

unless the restriction in the deed clearly restrained him from doing so. The language of this restriction is: "The lots hereby conveyed"—that is, the two lots mentioned in the deed—"is not to be subdivided." The division of the tract of land into lots twenty-five by one hundred feet was made by the complainants in their original scheme of improvement, which contemplated the use of each lot twenty-five by one hundred feet for a single dwelling. The language of the restriction in the deed now in question was not to the effect that no more than one building should be built upon these two lots, but it provides that the two lots "is not to be subdivided," &c. In the use of the lots conveyed, the defendant, in proposing to erect a building on each lot as the lots were divided in the scheme of improvement, does not subdivide any lot. His purpose is to appropriate the two lots he had bought in compliance with the general plan of improvement adopted by the complainants.

Taking the restriction in the deed now in question in connection with the plan of improvement adopted by the complainants, we think that the restrictive clause in this deed should apply only where the purpose of the grantee is to subdivide the lots conveyed into lots less in size than designated on the map, and that the words that "no more than one residence is to be erected upon the same" applied to each one of the lots conveyed by this deed, and not to both the lots as one tract, subject to the same restriction.

The order appealed from should be reversed.

*For reversal*—The Chancellor, Chief-Justice, Van Syckel, Dixon, Garrison, Lippincott, Gummere, Collins, Bogert, Hendrickson, Adams, Vredenburgh, Voorhees—13.

*For affirmance*—Ludlow—1.