**COULTER et, Plaintiffs, v. SEYBOLD et, Defendants.**

Common Pleas Court, Muskingum County.

No. 36248.   Decided June 20, 1949.

Meyer, Johnson & Kincaid, Zanesville, for plaintiff.

Don J. Hollingsworth, Charles S. Leasure, Jay B. Zellar, Zanesville, for defendant.

## OPINION

By CROSSLAND, J:    :

Plaintiffs in their petition claim that a restrictive covenant against the storage or sale of intoxicating liquor was contained in the deed to Clarence and Maude Seybold for Lot No. 24 of Home Acres Allotment, Falls Township, Muskingum County, Ohio, and also "in the deeds to other lots in said Allotment and was a part of the general restrictions for the use and benefit of the purchasers and owners thereof." Defendants deny that such restrictive covenant "was a part of a general plan of restriction" for said use and benefit, and claim that defendants Seybold lacked actual knowledge of such covenant in the deed to them and also that its presence therein was at variance with their contract of purchase of said lot.

The deed of Guy C. Fergus to Clarence O. Seybold and Irene Seybold, dated August 4, 1947, for said Lot No. 24 contains a covenant providing that "It shall not be used—for the storage or sale of intoxicating liquor."

Said deed was delivered subsequent and pursuant to a contract of sale between the parties, dated September 5, 1945; said contract of sale not containing the aforesaid restrictive covenant.

The Seybold deed was delivered to The Mutual Federal Savings and Loan Association of this city, from where it was filed for public record August 20, 1947, the Seybolds being present at said institution at the time of and in connection with said deed delivery, which was then and thereby available for their inspection and rejection or acceptance, and which thereafter was filed for record with either their active or passive consent.

If the grantee assumes or retains control of the property, this affords strong, if not conclusive, evidence of his acceptance of the deed.

Thompson on Real Property, Vol. 7, page 641, sec. 4172.

"If a deed is delivered to a third person for a purchaser who has paid the price, and such third person is authorized to receive the deed, there is a presumption of delivery, though the agent never delivered the deed to his principal."

Thompson, supra, pag 642, sec. 4174.

Regarding knowledge by the Seybolds of the contents of their said deed by virtue of their receipt and acceptance of it, such knowledge by them, legally, even if not actual, is imputed.

"The conveyance is constructive notice of its contents, including all recitals of restrictive covenants and reservations."

Thompson on Real Property, Vol. 8, pages 373-4, sec. 4497.

Since the foregoing applies equally to the plaintiffs and all other title holders in said allotment, they likewise are charged with notice and knowledge of the contents of their respective deeds. As a matter of law, therefore, plaintiff Coulter knew that his deed for Lot No. 107 contained no covenant against the sale of intoxicating liquor, and since it was acquired in his behalf in October, 1945, he was acquainted with such fact before the Seybolds acquired title to their property, and, a fortiori, before operation of the business herein sought to be enjoined, and at the time, if not before, such plaintiff purchased his lots 112 and 113.

What is true concerning lot purchases of plaintiff Coulter is likewise true concerning all lot purchases of plaintiff Owens and plaintiffs' witness Julia Smith, wife of plaintiff Smith, whose interest in Lots 94 and 95 is shared with her.

Plaintiffs claim the right to bring this action, as well as predicating a part of their cause of action, upon the following paragraph of the Seybold deed:

"The restrictions of this deed and all other deeds to the lots of Home Acres Allotment are for the joint benefit of each and every one, and for all owners of lots in the Addition, and any owner of a lot in said Allotment is hereby given the right to enforce restrictions herein contained, **and the owners hereof are given the same right** as to any and all lots in the Allotment." (Emphasis by the court.)

Certain situations are obvious among the parties hereto, as well as with respect to numerous other owners within the Allotment. The Seybold deed of August 4, 1947, did not and could not confer upon them authority or power in derogation of rights of property use not restricted in prior deeds to plaintiffs Coulter, Owens and Smith, for Lots 107, 12 and 96, respectively. Nor could it do so against numerous other lots in said Allotment deeded before said date and not containing a liquor restriction.

In as much as the Seybolds could not enforce the covenant in their deed against such other lots so as to protect themselves in their use of Lot No. 24 from the use of such other lots for the sale of intoxicating liquor, may such restrictive

covenant in their deed be binding upon them, particularly at the instance of owners not so bound?

Regardless of whether the Seybold contract of purchase has or has not relationship to this case in any other respect, its date did mark and determine their purchase of said Lot No. 24 from Guy Fergus, which their deed therefore later consummated, and which contract also provided that: "No —other agreement—not expressed in this contract will be recognized or binding upon either Buyer or Seller."

The further question therefore arises—did said purchasers, the Seybolds, buy with reference to a general plan, wherein the covenant not to sell intoxicating liquor entered into the consideration of their purchase and also wherein such covenant was entered into as part of a general plan? The answer is "NO."

The rule is summarized on page 94, vol. 7, of Thompson on Real Property, last sentence of first paragraph of section 3608:

"The right of grantees from the common grantor to enforce, inter sese, covenants entered into by each with said grantor, is confined to cases where there has been proof of a general plan or scheme for the improvement of the property, and its consequent benefit, and the covenant has been entered into as part of a general plan **to be exacted from all purchasers, and to be for the benefit of each purchaser,** and the party has bought with reference to such general plan or scheme, **and the covenant has entered into the consideration of his purchase."** (Emphasis by the court.)

"What Shows General Plan of Development. Frequently, the test of the right of one lot owner to enforce restrictions against another lot owner depends on whether these restrictions are uniform for all lots similarly situated, and a part of the general plan for the whole tract, and **it is important to determine whether restrictions are uniform within this rule.** Restrictions are not to be regarded as uniform within its meaning, where a landowner subdivides and sells some lots without any restrictions, some by deeds placing the building line 50 feet from the sidewalk, and others restricting it to 40 feet, while deeds to others contain the condition that but one dwelling house shall be erected or **that liquor shall not be sold,** or that the lots are to be used for residence purposes only." (Emphasis by the court.)

**13 O. Jur., 993, section 173.**

"The question of the existence of a general plan is one of fact, to be determined with reference to the particulars and conditions of the laying out and sale of the lots so indicated either verbally or in writing."

Tiffany "Real Property," 3rd Ed., Vol. 3, page 505, sec. 868.

"Where the owner of land subdivides and sells it to lot purchasers, with restrictions in the deeds as to the purpose for and manner in which the land may be used, one lot purchaser can not enforce such restrictions against another purchaser, unless the restrictions are uniform for all the lots similarly situated, **and part of a general scheme for the improvement of the whole tract.**" (Emphasis by the court.)

Shubert v. Eastman Realty Co., 1 O. C. C. N. S., 585, 1st syllabus.

"Where the right to enforce a restriction contained in the conveyance as to the use of the property conveyed is doubtful all doubts should be resolved in favor of the free use thereof for lawful purposes by the owner of the fee."

**Hunt v. Held, 90 Oh St, 280, 1st syllabus.**

Under the evidence and the law the court considers that it can arrive at no other proper conclusion and decision in this case than to refuse and dismiss the petition for injunction at plaintiffs' costs and to direct that an entry be prepared accordingly by prevailing counsel fully incorporating the within findings of fact and law, and submit the same to opposing counsel for their consideration, and then to the Court for its approval before filing; with exceptions to plaintiffs.