351 P.2d 1104

Clarence J. SMITH and Thelma B. Smith, his wife, Rodman K. Palmer and Mary G. Palmer, his wife, Julius Harr and Pearl Elaine Harr, his wife, Otto Schmieder and Ruby M. Schmieder, his wife, Morton S. Kleinberg and Maxine Ruth Kleinberg, his wife, Sol Tropp and Isabel R. Tropp, his wife, Edgar Pound and Garnett Pound, his wife, John Welsh, Jr., and Ann M. Welsh, his wife, Alfred Andersen and Vera M. Andersen, his wife, William Price, W. D. Manor, and Victoria Manor, his wife, Charles L. Segersten and Helen B. Segersten, his wife, Frank J. Schmidt, Jr., and Florence H. Schmidt, his wife, Appellants,

v.

SECOND CHURCH OF CHRIST, SCIENTIST, PHOENIX, ARIZONA, a nonprofit corporation, Appellee.

No. 6659.

Supreme Court of Arizona.

May 11, 1960.

Rehearing Denied June 28, 1960.

Marks & Marks, Phoenix, for appellants.

Cunningham, Carson & Messinger and William H. Rehnquist, Phoenix, for appellee.

BERNSTEIN, Justice.

Plaintiff-appellee Second Church of Christ, Scientist, Phoenix, Arizona (hereinafter called the "appellee") commenced this action for a declaratory judgment against the other owners of property in Block 2, Orangewood, to determine whether the land owned by it in lot 10 thereof is encumbered by restrictive covenants

which prevent the building of a church. The court below entered summary judgment in favor of appellee, from which judgment this appeal has been taken by the other owners.

Block 2, Orangewood, is a tract of land in Maricopa County of approximately 160 acres, divided into lots numbered one through twenty. On March 7, 1913, a deed covering lots one through ten was recorded in Book 103 of Deeds, at pages 111 and 112, and contained the following clause (hereinafter called the "1913 covenant"):

"It is provided and covenanted as a covenant running with the land herein described and each and every part thereof that the grantee shall erect no dwellings on said land the cost of which shall be less than $4,000.00 each and it is further covenanted that no barns, garages or other buildings whatsoever shall be erected on said land until after the construction of said dwellings shall be well under way; provided that the above restrictions shall not apply to the West one-half of said premises." (Lot 10 is in the West one-half of said premises.)

On October 28, 1944 the Arizona Title Guarantee & Trust Company, as trustee, recorded in Book 66 of Miscellaneous Records, at page 570, a Declaration of Restrictions (hereinafter called the "1944 restrictions") on lots eleven through seventeen and the west one-quarter of lots five and six. The restrictions contained therein, which were declared to be "covenants and restrictions running with said lot or lots or parcels of land situated in said tract for the mutual benefit of the undersigned and all subsequent grantees of any portion thereof," are as follows:

"1. That said property shall be used for single dwelling houses only, except as provided, in Number 9 thereof.

"2. That no dwelling erected thereon shall cost less than Seventy-five Hundred ($7,500.00) Dollars.

"3. That no out building constructed thereon shall be more than one story in height and the main residence building shall comprise not less than fifteen hundred (1500) square feet of floor space.

"4. That no dwelling or out building shall be constructed nearer than sixty (60) feet to the front property line or nearer than ten (10) feet to any side line.

"5. That no out building or garage of any kind may be constructed until the main building has been constructed; or used temporarily or permanently as a dwelling or place of abode until the main residence has been completed.

*　　*　　*　　*　　*　　*

"8. That the undersigned and its grantees shall incorporate these covenants and restrictions in any deeds executed by them to lots in the above described tract either in full or by reference.

\* \* \* \* \*

"10. That the foregoing covenants and restrictions shall run with the land for a period of twenty-five (25) years and that the grantees or any one owning land in said tract may have all appropriate rights to enforce the same."

By deed dated December 1, 1944, the Arizona Title Guarantee and Trust Company "granted, sold and conveyed" lot 10 to Charles F. and Myra U. Black. The following language appeared in the habendum clause:

"And the Grantor hereby binds itself \* \* \* to warrant and defend, all and singular the said property unto the said Grantees, their heirs and assigns \* \* \* subject to \* \* \* building and other restrictive covenants attaching to and running with the title, set forth in particular in Book 103 of Deeds, page 111 \* \* \*."

Thereafter, the Blacks' conveyed their interest in lot 10 as follows:

On April 15, 1952 they conveyed the north half (hereinafter called "parcel 1") to appellants Clarence J. and Thelma B. Smith "Subject To: \* \* \* Restrictions as contained in Warranty Deed recorded (the 1913 covenant) \* \* \*."

On September 24, 1952, they conveyed the southeast quarter (hereinafter called "parcel 2") to Frank W. and Louise Paul Beer "Subject To: \* \* \* Restrictions as set forth in instrument of record, recorded (the 1944 restrictions) \* \* \* and as contained in Warranty Deed, recorded (the 1913 covenant) \* \* \*."

On March 23, 1956, they conveyed the southwest one-eighth (hereinafter called "parcel 3") to Ralph A. and Ethel M. Harvey (who have apparently transferred their interest to two of the appellants herein) "Subject To: \* \* \* Restrictions in instruments recorded (the 1913 covenant and 1944 restrictions) \* \* \*."

On May 21, 1957, Myra H. Black, "dealing with her sole and separate property" conveyed the balance of lot 10, or the west-central one-eighth thereof (hereinafter called "parcel 4") to appellee "Subject To: \* \* \* Restrictions, conditions and covenants as contained in instrument recorded (the 1913 covenant) \* \* \*." The Blacks had no further interest in lot 10 following this conveyance, and are not parties to this action.

On May 21, 1957 appellee acquired title to parcel 2 by a conveyance from the Beers "Subject To: \* \* \* Restrictions, conditions and covenants as contained in instrument recorded (the 1913 covenant) \* \* \*."

We consider first what rights, if any, the owners of property in Block 2, other than lot 10, have to assert restrictions against appellee's interests in parcels 2 and 4 in lot 10. It is clear that they have no standing arising from the original declarations of the 1913 covenant and the 1944 restrictions. The 1913 covenant is expressly inapplicable "to the West one-half of said premises," within which area lot 10 lies; and the 1944 restrictions do not purport to apply to lot 10.

■ Nor can such owners of property outside lot 10 assert rights against any owners of lot 10 on the basis of the 1944 deed to the Blacks. That deed conveyed an estate in fee simple without any qualifications or conditions (see A.R.S. §§ 33–432, 33–435). The reference to the 1913 covenant following the words "subject to" is a qualification to the *warranty* made by the grantor and does not even purport to be a burden on the estate conveyed to the grantee.

■ Accordingly, there were no enforceable restrictions on lot 10 at the time the Blacks acquired title thereto in 1944. Such restrictions as are asserted in this proceeding must arise, if at all, from the deeds (hereinafter called the "Black deeds") which the Blacks executed in conveying their interest in parcels 1 through 4 in lot 10. On the basis of such deeds, the owners of property outside of lot 10 can, assuredly, maintain no interest. The Blacks were not their grantors and there is no theory applicable to this case upon which they can claim benefits emanating from provisions in deeds executed at a subsequent time, to other property and in favor of other grantees. See O'Malley v. Central Methodist Church, 67 Ariz. 245, 250–251, 194 P.2d 444; Korn v. Campbell, 192 N.Y. 490, 85 N.E. 687, 37 L.R.A.,N.S., 1.

The present owners of parcels 1 and 3 in lot 10 do assert such right, however, and claim that the 1913 covenant and the 1944 restrictions, referred to, at least in part, in the Black deeds, are binding on all of lot 10 and prohibit a church. It will first be determined whether such covenant and restrictions, if binding, do restrict a church building.

The 1913 covenant prohibits the erection of dwellings costing less than $4,000. A dwelling is, of course, a building suitable for residential purposes and does not include a church. See Ainsworth v. Elder, 40 Ariz. 71, 9 P.2d 1007; and 13 A.L.R.2d 1239. The only other provision restricting types of building is the clause that (the 1913 covenants):

"* * * no barns, garages or other buildings whatsoever shall be erected on said land until after the construction of said dwellings shall be well under way * * *."

 The general phrase "or other buildings" here follows the specific words "barns" and "garages", and under the rule of *ejusdem generis,* such general language must be confined in its meaning by the specific enumeration which precedes it, unless an intention to the contrary is clearly shown. See, City of Phoenix v. Yates, 69 Ariz. 68, 73–74, 208 P.2d 1147. Here we find no contrary intention and the words "other buildings" will not be enlarged to encompass a class more comprehensive than commonly implied from the words "barns" and "garages", which clearly do not include a church.

The 1944 restrictions provide that the property "shall be used for single dwelling houses only * * *." It cannot seriously be disputed, and indeed appellee concedes, that a church is not a single dwelling house and, accordingly, if the 1944 restrictions apply to lot 10, they clearly prohibit erection of a church thereon (see 13 A.L.R.2d 1239).

From the foregoing it is clear that appellee may be restrained from building a church on the parcels owned by it in lot 10 only if it is bound by the 1944 restrictions *and* if such restrictions may be enforced by the other owners of parcels in lot 10.

As noted above, the 1944 restrictions are by their very terms inapplicable to lot 10. The references to these restrictions in the Black deeds are not phrased in the form of covenants by which the grantees bind themselves expressly to the 1944 restrictions. Indeed, the Beers, who are the predecessors of appellee with respect to parcel 2, never executed the deed delivered to them by the Blacks. Although the absence of their signatures may not be determinative where they have accepted and recorded the deed (see Murphey v. Gray, 84 Ariz. 299, 305, 327 P.2d 751), nevertheless it tends to refute the conclusion that the restrictions, which are mentioned therein only by reference, were to be given greater scope and effect than expressed by their terms.

In the two Black deeds which allude in any way to the 1944 restrictions, these restrictions are referred to, along with others (which, so far as is known, may not even be applicable to the particular property), as items which the property is "subject to". The creation of new restrictions on the use of land requires greater clarity and explicitness than are found in the deeds here in issue. Restrictive covenants will not be lightly inferred from the mere reference in a "subject to" clause to a recorded instrument which contains otherwise inapplicable burdens.

The precise effect of such references in the "subject to" clause has not been previously determined by this Court, but we note that other jurisdictions have generally refused to enlarge the obligations of the grantee thereby.

Van Duyn v. H. S. Chase & Co., 149 Iowa 222, 128 N.W. 300, is particularly in point. There a certain restriction had been validly imposed upon the front half and east side of a particular lot. When a portion of said lot which was not within the restricted area was subsequently subdivided and conveyed "subject to" said restrictions, other owners claimed that the restrictions applied to the front half and east side of the subdivided tract.

The court held that the conveyance of the subdivided tract "subject to" the original "restrictions neither extended nor enlarged such restrictions so as to extend them to the tract conveyed" (128 N.W. at page 302). The court stated:

"From taking the conveyance of the small tract of land at the rear of the lot subject to the restrictions in an earlier deed to the lot, no new obligation is implied. The most that can be said is that it became impressed by and servient to the restrictions contained therein, and, if these did not relate thereto, there is no ground for implying like restrictions as imposed thereby on the tract conveyed to Chase. Moreover, it is not to be overlooked that the law favors the utmost freedom in dealing with real property. It is recognized as an article of commerce. As new wants develop, and business increases and expands, the uses to which devoted are constantly chang-

ing. To tie up realty with restrictions and prohibitions, where the fee is conveyed, is opposed to the settled business policy of the country; and for this reason, in construing deeds containing restrictions and prohibitions as to the use, doubts are to be resolved in favor of the free use of the property. Hutchinson v. Ulrich, 145 Ill. 336, 34 N.E. 556, 21 L.R.A. 391; James v. Irvine, 141 Mich. 376, 104 N.W. 631; Walker v. Renner, 60 N.J.Eq. 493, 46 Atl. 626; Conger v. Railway, 120 N.Y. 29, 23 N.E. 983; 11 Cyc. 1077." (128 N.W. at page 301.)

See, also, Ivey v. Blythe, 193 N.C. 705, 138 S.E. 2, 3, where the court stated:

" * * * A restriction of the free enjoyment and use of property should be created in plain and express terms; and, while perhaps it may be possible, by implication, to create restriction and incumber the free and untrammeled flow of property from purchaser to purchaser, such implication ought to appear plainly and unmistakably."

In De Sanno v. Earle, 273 Pa. 265, 117 A. 200, 202, the court there stated:

"The mere recital of the restriction in the later deeds could not have the effect of enlarging the original obligations of the covenant, whatever they were. Hamlen v. Keith, 171 Mass. 77, 50 N.E. 462. * * *"

Accord: Percival v. Williams, 82 Vt. 531, 74 A. 321. Cf. Sargent v. Leonardi, 223 Mass. 556, 112 N.E. 633; Consolidated Coal Co. v. Peers, 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624; Cox v. Butts, 48 Okl. 147, 149 P. 1090; Kokernot v. Caldwell, Tex. Civ.App., 231 S.W.2d 528. But cf. Godley v. Weisman, 133 Minn. 1, 157 N.W. 711, 158 N.W. 333, L.R.A.1917A, 333.

▇ The point is that reference to restrictions in a "subject to" clause will not, without more, make such restrictions applicable to the deeded property if, as a matter of fact, they are otherwise inapplicable.

▇ Here, the 1944 restrictions are by their very terms inapplicable to lot 10 and we hold that they cannot be carried over to apply to this lot merely by reference thereto in a "subject to" clause. Nor is it sufficient answer to assert that, unless such restrictions are elevated to the status of restrictive covenants binding on the conveyed property, the reference to them has no meaning. Although such reference does not impose new restrictions on the land, it nonetheless serves a very necessary and desirable purpose for the grantor. When property is conveyed by warranty deeds, such as the Black deeds here, it is in the interest of the grantors that the conveyance be made subject to every restriction or encumbrance which not only does apply to such property but also *may* apply. The inclusion of restrictions in the "subject to" clause may thus express a wise precaution on the part of the grantor (cf. Donahoe v. Turner, 204 Mass. 274, 90 N.E. 549). It would indeed be foolhardy for a grantor who is delivering a warranty deed to fail to refer to a restriction which may at some time in the future be held to apply to his property, merely to avoid the criticism of excess wordiness. Thus, it is not unusual for conveyances to be made subject to all recorded covenants, easements and restrictions, without specific enumeration, and it would be inappropriate, to say the least, to infer restrictions because it may subsequently turn out that none then applied to the property.

As a matter of fact, the deeds to parcels 1 and 2 are made subject to any restrictions "imposed by any planning authority". It need hardly be argued that the Blacks did not thereby covenant that there were, in fact, such restrictions, otherwise the references thereto would be meaningless. Indeed, the absence of the same references in the deeds to parcels 3 and 4 suggests that no such restrictions may have then been in force.

▇ The fact that the 1913 covenant and the 1944 restrictions are set forth in the Black deeds separately from the warranty clause and not as specific exceptions thereto is of no particular significance. In each of the deeds to parcels 3 and 4, the warranty

clause is printed as the last or next-to-last paragraph, with insufficient space available thereafter to enumerate excluded restrictions. In fact, it is expressly contemplated that exceptions to the warranty will be listed above the clause, and not after it. Thus, the warranty clause provides:

"And I or we do warrant the title against all persons whomsoever, *subject to the matters above* set forth." (Emphasis added.)

Likewise, the same clause is typed at the end of the deeds to parcels 1 and 2.

From the indisputable circumstances which appear from the record in this case and especially the conveyances of the property in issue, it is particularly significant that of the entire lot 10, parcel 1 was sold by the Blacks, first, without reference to the 1944 restrictions which prohibit a church, and that the deed to parcel 4, which was sold last, is devoid of any reference to the 1944 restrictions. Thus, on five-eighths of lot 10 a church may freely be built, even if the "subject to" clause imposed new restrictions. We note, also from the record, that lot 9, which lies on the easterly side of lot 10, is not encumbered by the 1944 restrictions. In sum, of the property adjoining parcel 2, a church is permitted on two sides; one side is unknown; and on the fourth side, one-half is not even "subject to" church restrictions.

It is perfectly clear, therefore, that lot 10 is not part of a common neighborhood plan or general building scheme which would permit appellants to enforce restrictions against appellee. If any such scheme were ever intended it does not appear from the deeds and the chronology of the conveyances, and in view of all of the circumstances it must be held to have failed.

There is considerable authority to support this conclusion. In the leading case of Werner v. Graham, 181 Cal. 174, 183 P. 945, the court stated:

"The enforcement of covenants restricting the use of one parcel of land for the benefit of another parcel, not merely as between the original parties, but as between their respective grantees, between whom no privity of estate or of contract can properly be said to exist, originated at a comparatively recent date in the chancery courts, and apparently without a clear appreciation of the fact that the enforcement of such covenants for and against grantees of the original parties was, in effect, the creating of servitudes. Such servitudes are frequently spoken of as 'equitable easements.' They were unknown to the common law and are not among the servitudes enumerated by our Code. Sections 801 and 802, Civ. Code. They are opposed to the role that the owner of land may not create

new and heretofore unknown estates, and while their validity—that is, the enforceable character of such covenants as against grantees of the original parties—is now too well established to admit of question, it has resulted that the covenants which will be so enforced are limited to those which directly concern and benefit what we may term the dominant tenement, and also that any provisions of an instrument creating or claimed to create such a servitude will be strictly construed, any doubt being resolved in favor of the free use of the land. Firth v. Marovich, 160 Cal. 257, 116 P. 729, Ann.Cas.1912D, 1190; Berryman v. Hotel Savoy Co., 160 Cal. 559, 117 Pac. 677, 37 L.R.A.(N.S.) 5; Bresee v. Dunn, 172 Pac. 387.

\*　　\*　　\*　　\*　　\*　　\*

"\* \* \* The situation in this respect is that one, the owner of a tract of land, sells a portion of it, exacting of the grantee restrictive provisions as to its use, but without a word indicating that the land conveyed is part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to or pass with other lands, and without any description or designation of what is an essential element of any such servitude as is claimed, namely, the land which is to be the dominant tenement. Servitudes running with the land in favor of one parcel and against another cannot be created in any such uncertain and indefinite fashion. It is true the nature of the restrictions is such that, when considered in connection with the fact that Marshall [the common grantor, similar to the Blacks in the instant case] still retained the greater portion of the tract, it is not improbable that he exacted them for the benefit of the portion so retained. But the grantee's intent in this respect is necessary, as well as the grantor's, and the deed which constitutes the final and exclusive memorial of their joint intent, has not a word of that effect, nor anything whatever which can be seized upon and given construction as an expression of such intent. If such was their intent, it has not been expressed. Omitting, as we must, any consideration of what the understanding was between Marshall and his grantees, except as shown by the instruments between them, and construing the deed in the light of the fact that Marshall was at the time the owner of a large number of other lots in the tract, it may yet well be that the grantee intended to obligate himself only to Marshall, his heirs and assigns. Certainly that is all that is said. It is also difficult to see how there can be any valid creation of what is practically a servitude, without some

designation or description of what is an essential factor, namely, the dominant tenement. McNichol v. Townsend, 73 N.J.Eq. 276, 67 Atl. 938; Renals v. Cowlishaw, L.R. 11 Ch.Div. 866; Wagner v. Hanna, 38 Cal. 111, 116, 99 Am. Dec. 354. * * *

\* \* \* \* \*

"This whole discussion may in fact be summed up in the single statement that, if the parties desire to create mutual rights in real property of the character of those claimed here, they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them, which constitute the final expression of their understanding. * * *" (183 P. at pages 947–949).

The effect of similar restrictions imposed in deeds which do not refer expressly to a common plan was discussed in Cejka v. Korn, Mo.App., 127 S.W.2d 786, 789:

"Similar or identical restrictions are not sufficient of themselves to establish the existence of a general scheme, or that the restrictions in the deed under which the plaintiff claims were intended for the benefit of any other lot or lots conveyed by the common grantor. It requires the joint intent of the grantor and grantee, and as between them the instrument or instruments exchanged and forming a part of the transaction constitute the final and exclusive evidence of the intent of the parties and of the covenants entered into. Pierson v. Canfield, Tex.Civ.App., 272 S.W. 231."

As stated in Wing v. Forest Lawn Cemetery Ass'n, 15 Cal.2d 472, 101 P.2d 1099, 1104–1105, 130 A.L.R. 120:

" '* * * The restrictions must not only appear in one deed, but in all the deeds, and must expressly declare that such restrictions are for the benefit of and run with all other lots in the designated area. In other words, the restrictions must be for the mutual benefit of all parcel owners and each lot imposed with a servitude for the benefit of each and every other lot. It is necessary to state in the deed what is the servient and what is the dominant tenement. See Berryman v. Hotel Savoy Co., 160 Cal. 559, 117 P. 677, 37 L.R.A., N.S., 5; Werner v. Graham, 181 Cal., at 174, 183 P. 945; McBride v. Freeman, 191 Cal. 152, 215 P. 678. The intent of the parties to create mutual and reciprocal rights of restrictions between the grantees of the original grantor must appear in the deed. Gamble v. Fierman, 82 Cal.App. [180] at page 182, 255 P. 269.' "

See also Edwards v. Surratt, 228 S.C. 512, 90 S.E.2d 906, 911; Coulter v. Seybold, Ohio Com.Pl., 94 N.E.2d 47; Pierson v. Canfield, Tex.Civ.App., 272 S.W. 231, 233–

234; Judd v. Robinson, 41 Colo. 222, 92 P. 724, 726.

In the instant case certainly there is no general scheme or uniform plan of development as to lot 10 viewed either separately or as part of the surrounding property. If part of such surrounding property evidenced a neighborhood plan, it expressly excluded lot 10; and the Black deeds, which conveyed parcels 1 and 4 free of any mention of the 1944 restrictions, demonstrate conclusively the lack of any meaningful intention of the parties to implement a separate common plan on lot 10. To hold in the circumstances that parcels 2 and 3 constituted a separate "common neighborhood plan" would deprive that phrase of all meaning.

The absence of a general scheme or uniform plan may be sufficient alone to deny appellants any rights against appellee. As stated in Whitmarsh v. Richmond, 179 Md. 523, 20 A.2d 161, 163:

"* * * And when it appears there is no general scheme, or uniform plan of development, which is shown by the fact that not all of the lots were under restrictions, the covenant cannot be enforced. 14 Am.Jur. p. 656, Sec. 319; Wood v. Stehrer, 119 Md. 143, 86 A. 128; Ross v. McGee, 98 Md. 389, 56 A. 1128; Halle v. Newbold, 69 Md. 265, 14 A. 662."

See also 7 Thompson on Real Property, § 3613, where it is stated:

"* * * It is held that equity will not enforce restrictive covenants in deeds at the instance of other property-owners unless there is reasonable uniformity in the restrictions imposed, so that each lot owner is afforded a protection against the acts of others equal to the restrictions on his own acts."

■ Even where grantees of a common grantor are permitted, in the absence of a general uniform plan, to assert restrictions imposed by the grantor on other grantees, certain rather stringent requirements, not here met, must be fulfilled. Thus, a grantee may enforce rights only against a *prior* grantee of the same grantor and, then, only where it clearly appears that the grantor imposed the restrictions on said prior grantee not for himself personally but for the benefit of his retained property and the subsequent grantees of such property. See O'Malley v. Central Methodist Church, supra, 67 Ariz. at page 251, 194 P.2d at page 449.

■ In this case such rule would prevent the owner of parcel 1 from asserting any rights against the owners of the other parcels in lot 10, and parcel 3 would have no rights against parcel 4. The only relationship which in any manner might comply with this rule is that between parcels 2 and 3. To hold that parcel 3 could restrict appellee from building a church where no other property owner could enforce such re-

striction and where appellee could freely build a church on adjoining property, especially parcel 4, would be self-defeating.

Particularly appropriate is the rule expressed in Whitmarsh v. Richmond, supra, 20 A.2d at page 164

"The reason for the enforcement of a restrictive covenant of the nature of those in this instance has entirely ceased, and, as held by this Court, equity will not enforce a covenant when to do so would be to encumber the use of the land, without at the same time achieving any substantial benefit to the covenantee. Summers v. Beeler, supra; Adams v. Plaza Construction Co., 157 Md. 674, 145 A. 483; Himmel v. Hendler, 161 Md. 181, 155 A. 316; Legum v. Carlin, 168 Md. 191, 177 A. 287, 99 A.L.R. 536; Hurd v. Albert, 214 Cal. 15, 3 P.2d 545, 76 A.L.R. 1348."

We hold that the 1913 covenant and the 1944 restrictions do not apply to and bind lot 10, and that appellee is not restricted from building a church on parcels 2 and 4 of lot 10 by virtue of such covenant and restrictions.

Judgment affirmed.

PHELPS and UDALL, JJ., concur.

STRUCKMEYER, Chief Justice (dissenting).

So that my differences with the majority may be clarified, some of the material facts will be emphasized. Lot 10 is a tract of land, rectangular in shape, approximately 320 ft. x 600 ft., acquired by the Blacks in December of 1944. The first transfer from the Blacks was the north one half of lot 10 to appellants Clarence J. Smith and Thelma B. Smith. The deed from the Blacks to the Smiths did not in any manner pretend to bind this parcel of land (parcel 1) to the 1944 restrictions. Since the Declaration of the 1944 Restrictions does not purport to cover lot 10, it cannot be seriously urged that the north one half thereof is, or ever was subject thereto; but this does not mean that the rights of the owners of the three parcels comprising the south one half of lot 10 need be categorically classified in the same manner.

Parcel 2, the east half of the south half of lot 10, was transferred to the Beers, husband and wife, by deed, with the customary unqualified granting clause. The granting clause was immediately followed by this paragraph:

"*Subject To*: Regulations and restrictions imposed by any planning authority; Provisions of that certain Water Right Application recorded in Book 10 of Water Right Applications, at page 93; Easement to the Mountain States Telephone and Telegraph Company, as set forth in instrument of rec-

ord in Book 64 of Miscellaneous Records, at page 216; Right of way and easement to The Mountain States Telephone and Telegraph Company, as set forth in instrument of Record in Book 36 of Miscellaneous Records at page 88; *Restrictions as set forth in instrument of record, recorded October 28, 1944, in Book 66 of Miscellaneous Records, at page 570;* and as contained in Warranty Deed, recorded March 7, 1913, in Book 103 of Deeds, at page 111; Records of Maricopa County, Arizona." (Emphasis supplied.)

A somewhat similar clause is contained in the deed to Parcel 3.

It is apparent that if Parcels 2 and 3 are not subject to the restrictions of 1944 as set forth in Book 66 of Miscellaneous Records at page 570, no effect will be given to an entire clause in both deeds, and this court, by such deletion, has without so saying rewritten the instruments. This, of course, is contrary to the legal principle that all parts of a deed must be given legal effect, if possible. Few rules are better settled. For some of the more recent cases see: Stratford v. Lattimer, 255 Ala. 201, 50 So.2d 420; Bradley Lumber Co. of Arkansas v. Burbridge, 213 Ark. 165, 210 S.W.2d 284; Kraemer v. Kraemer, 167 Cal.App.2d 291, 334 P.2d 675; Percifield v. Rosa, 122 Colo. 167, 220 P.2d 546; Dolley v. Powers, 404 Ill. 510, 89 N.E.2d 412; Cockrell v. Texas Gulf Sulphur Co., 157 Tex. 10, 299 S.W.2d 672;

Conner v. Hendrix, 194 Va. 17, 72 S.E.2d 259. For example, in Dolley v. Powers, supra, 89 N.E.2d at page 414, the governing principle is stated:

"Since it cannot be presumed that the parties used words or terms in a deed without intending that some meaning or effect be given them, a construction will be adopted, if legally permissible, giving effect to the whole instrument and to each word and term used, rejecting none as meaningless, repugnant or surplusage."

In Conner v. Hendrix, supra, 72 S.E.2d at page 265, this language was used:

" 'It is a well-settled rule of construction that inasmuch as the parties must have intended all the provisions and terms of a deed to have some meaning and be given some import, from the fact that the terms and provisions were actually inserted in the deed, a deed will be so interpreted as to make it operative and effective in all its provisions, if its terms are susceptible of such interpretation. Every word, if possible, is to have effect, for, it has been said, the deed, as the witness to the contract between the parties, should speak the truth, the whole truth, and nothing but the truth."

The majority give lip service to this principle by stating that "When property is conveyed by warranty·deeds, such as the Black

deeds here, it is in the interest of the grantors that the conveyance be made subject to every restriction or encumbrance which not only does apply to such property but also *may* apply." This argument is manifestly specious when the Declaration of Restrictions is examined.

"Declaration of Restrictions on Portions of Orangewood Subdivision

"Whereas, the undersigned, Arizona Title Guarantee & Trust Company, of Phoenix, Arizona, is the owner as Trustee, of that certain tract or parcel of land situate in the County of Maricopa, State of Arizona, and more particularly described as follows, to-wit:

"Lot 11, 12, 13, 14, 15, 16 and 17 and the W¼ of lot 5 and 6 in Block 2, Orangewood Subdivision, plat of which is of record in Book 2 of Maps, page 50, Maricopa County Recorder's Office; and

"Wheras, the undersigned is replating [sic] and resubdividing said property into smaller tracts or parcels of land to be sold and used for residence purposes with the intent of making the same a high class district comprising only substantial homes;

"Now, Therefore, the undersigned does hereby declare that the following express covenants and restrictions as to the use and enjoyment by any subsequent grantee of any lot or parcel of land in said above described tract, as resubdivided, shall be covenants and restrictions running with said lot or lots or parcels of land situated in said tract for the mutual benefit of the undersigned and all subsequent grantees of any portion thereof, and which said covenants and restrictions are as follows, to-wit: * * *."

The restrictions do not, and obviously cannot, apply to lot 10, simply because the lots to which they do apply are specifically enumerated. It is inconceivable that intelligent men could believe that the restrictions were applicable to any parcel of land anywhere other than to those named in the Declaration of Restrictions.

Other facts nullify the majority's conclusion. The Arizona Title Guarantee & Trust Company, as the grantor of lot 10, signed and filed the Declaration of Restrictions 34 days before transferring lot 10 to the Blacks. Its deed expressly subjected lot 10 to certain easements, rights of way, and the restrictive convenants to be found in Book 103 of Deeds, page 111, but made no reference whatsoever to the Declaration of Restrictions above stated recorded in Book 66 of Miscellaneous Instruments. In the light of the fact that lot 10 was made subject to some restrictive covenants but was excluded from those in question, is it possible to believe that there could be any misconception by Black as to the extent of

the restrictions embracing the property at the time he accepted the deed?

Furthermore, the interpretation accorded by the majority does not conform with the accepted legal construction of the words "subject to" in deeds. It has been repeatedly held that the words "subject to" in deeds are words of qualification and a limitation on the grant. Harley v. Magnolia Petroleum Co., 378 Ill. 19, 37 N.E.2d 760, 137 A. L.R. 900; Kelley v. Haas, Ky., 262 S.W.2d 687; Ozehoski v. Scranton Spring Brook Water Service Co., 157 Pa.Super. 437, 43 A.2d 601; Cockrell v. Texas Gulf Sulphur Co., supra. For example, in Harley v. Magnolia Petroleum Co., supra, 37 N.E.2d at page 766, the Supreme Court of Illinois dismissed a contention that the property in question was not subject to the provisions of a certain lease with this statement:

> "These grantees knew that they were taking their deeds 'subject to' the provisions of the lease as recited in the deeds which were prepared and presented by them. The words 'subject to' are words of qualification of the estate granted. Consolidated Coal Co. v. Peers, 166 Ill. 361, 46 N.E. 1105, 38 L.R.A. 624; Leonard v. Caruthers, Tex.Civ.App., 236 S.W. 189; Percival v. Williams, 82 Vt. 531, 74 A. 321."

The majority state that restrictions in a "subject to" clause will not, without more, make such restrictions applicable to the deeded property if, as a matter of fact, they are otherwise inapplicable. I do not quarrel with the statement. It simply has no application here, for the restrictions are plainly applicable to Parcels 2 and 3. This entire area for many blocks surrounding lot 10 is a residential area of the highest type. Each and every one of these restrictions, providing as they do, that lots shall be used for single dwelling houses costing not less than $7,500, to be of one story in height, comprising not less than 1,500 sq. ft., that the dwellings and outbuildings shall not be constructed nearer than 60 feet from the property line and 10 feet from the side line, that lots may not be subdivided into less than 30,000 sq. ft., etc., is in every respect applicable to the parcels in the south half of lot 10.

In this state, as everywhere, it has become a common practice for a land developer to file or record plats of subdivisions. The deeds to the numerous grantees in the subdivision do not repeat all the restrictions, but simply state that the land is "subject to" the restrictions in the plat. The majority opinion in this repect runs against the common commercial practice and against the well-recognized rule of law that restrictions may be imposed by reference, using the phrase "subject to". Davis v. Huguenor, 408 Ill. 468, 97 N.E.2d 295, 297, 23 A.L.R.2d 931; Wischmeyer v. Finch, 231 Ind. 282, 107 N.E.2d 661. This

court has, without discussion, upheld the validity of restrictions which were incorporated by reference. Whitaker v. Holmes, 74 Ariz. 30, 243 P.2d 462. If restrictions are both applicable and inapplicable, those suitable to the property conveyed will be enforced. Godley v. Weisman, 133 Minn. 1, 157 N.W. 711, 158 N.W. 333, L.R.A. 1917A, 333.

For the foregoing reason, the judgment of the lower court should be reversed, but, if as a matter of law it is possible to say that the meaning of the "subject to" clause is ambiguous, then the summary judgment is patently erroneous, since then it would be the duty of the trial court to determine the intention of the parties to the deeds as a question of fact from the circumstances surrounding the sale of the properties.

A further problem which, while not raised in the briefs, is implied from the long quotation from Werner v. Graham, 181 Cal. 174, 183 P. 945, is whether the restrictive covenants are such as run with the land. As to this, there can be no room for argument. The Declaration of Restrictions in Book 66 of Miscellaneous Records at page 570 expressly provides by paragraph 10 "That the foregoing covenants and restrictions shall run with the land for a period of twenty-five (25) years * * *." Of a similar covenant, the Court of Appeals of New York said in Neponsit Property Owners' Ass'n v. Emigrant Industrial Savings Bank, 278 N.Y. 248, 15 N.E.2d 793, 795, 118 A.L.R. 973:

"There can be no doubt that Neponsit Realty Company [grantor] intended that the covenant should run with the land and should be enforceable by a property owners association against every owner of property in the residential tract which the realty company was then developing. The language of the covenant admits of no other construction."

Here, the language of paragraph 10 of the Declaration of Restrictions admits of no other construction but that the covenants were intended to run with the land.

No contention has been made that there was no privity of estate or that the restrictive covenants do not touch and concern the land. The question then becomes whether, under the circumstances of this case, these restrictions are enforceable by the Palmers, the present owners of Parcel 3 as against the present owners of Parcels 2 and 4. Here again, the law is well developed and settled.

"A very common purpose of restrictions as to the use of property conveyed is to benefit land retained by the grantor. Where the owner sells a part of his premises, and imposes a restriction on the purchaser, by which the lands retained will be benefited, the transaction is sufficient to show an

intention that the restriction is for the benefit of the lands retained, *and the grantor or his subsequent grantee can enforce it.*" (Emphasis supplied.) 21 A.L.R. 1288. And see the cases collated and analyzed therein.

The majority in the instant case state that "It is perfectly clear, therefore, that lot 10 is not part of a common neighborhood plan or general building scheme * * *." This, of course, is true. Lot 10 never was a part of the common neighborhood plan, but this does not mean that the rights of the Palmers who are the owners of Parcel 3 as against the owners of the remainder of the south one half of lot 10 can be disregarded. Anderson v. Henslee, 226 Ky. 465, 11 S.W.2d 154, 157, is directly on point.

"* * * restrictions have been upheld when inserted in deeds under a general plan of a subdivision, and no reason appears why the same rule should not apply to a two-lot subdivision. Hartt v. Rueter, 223 Mass. 207, 111 N.E. 1045; Lacentra v. Valeri, 244 Mass. 404, 138 N.E. 388; Hart v. Little, 103 Misc.Rep. 620, 171 N.Y.S. 6; Bouvier v. Segardi, 112 Misc. Rep. 689, 183 N.Y.S. 814; Clark v. Martin, 49 Pa. 289.

"In the latter case the court said:
"'It is not because a plan is deranged that the court interferes, but because rights are invaded, or about to be; and this fact may exist in a plan of two lots, as well as in one of 200. The plan often furnishes the proof of the terms on which sales were made; but the fact of the alleged terms is as effective when proved by a single deed as when proved by a plan.'"

There is no reason in law or in equity why, even though the north half of lot 10 was sold without restrictions, the south half could not be conformed to the general scheme by which this entire neighborhood was developed.

While the cenveyance of Parcel 2 by the Beers to the appellee did not contain the recital that the land conveyed was subject to the restrictions of 1944, nevertheless, appellee is charged with constructive notice thereof, since they appear in its chain of recorded title. Gamble v. Fierman, 82 Cal.App. 180, 255 P. 269; Dolan v. Brown, 338 Ill. 412, 170 N.E. 425; Allen v. Massachusetts Bonding & Ins. Co., 248 Mass. 378, 143 N.E. 499, 33 A.L.R. 669; Hayes v. Gibbs, 110 Utah 54, 169 P.2d 781, 168 A.L.R. 513.

It is apparent that by imposing the 1944 restrictions on Parcels 2 and 3, grantors Black conformed those parcels to the general plan of development of the adjacent property in block 2, Orangewood Subdivi-

sion. The only remaining problem, is what effect does this have on Parcel 4? It is an equitable rule that where a plan of development exists and the grantee takes with notice of the restrictions, either actual or constructive, they may be enforced, even though, through inadvertence or otherwise, they have not been imposed on one of the parcels. Grange v. Korff, 248 Iowa 118, 79 N.W.2d 743; Turner v. Brocato, 206 Md. 336, 111 A.2d 855; Sanborn v. McLean, 233 Mich. 227, 206 N.W. 496, 60 A.L.R. 1212. The principle here is that when an owner of land contracts with the purchasers of successive parcels in respect to the manner of occupation and improvement of such parcels, the remainder of his lands are affected with an equity which requires that they also be occupied and improved in conformity with the plan. This equity is binding upon a purchaser of the remaining parcel who has notice of the prior covenants, even though his legal title is unrestricted. Grange v. Korff, supra.

It is my conclusion that the judgment of the court below should be reversed with directions to set aside the summary judgment heretofore entered against appellants Rodman K. Palmer and Mary G. Palmer, his wife, and with the further direction to enter a summary judgment in their favor, declaring the 1944 restrictions valid and enforceable by them as against the owners of Parcels 2 and 4.

JOHNSON, J., concurs in this dissent.