[Civ. No. 15448. Fourth Dist., Div. Two. May 18, 1976.]

RICHARD J. ANTHONY et al., Plaintiffs and Appellants, v.
BREA GLENBROOK CLUB et al., Defendants and Respondents.

---

## COUNSEL

Siegfried H. Siefkes for Plaintiffs and Appellants.

William E. Dannemeyer for Defendants and Respondents.

---

## OPINION

**FOGG, J.**\*—Plaintiffs appeal from a judgment which determined that a covenant contained in deeds requiring membership in a homeowners' association is enforceable as a covenant running with the land.

### Statement of Facts

Plaintiffs are homeowners in the subdivision project of "Glenbrook Hills," a residential community composed of 525 individual lots with a single family dwelling on each lot. The development is located in Brea, California. Brea Glenbrook Club, a defendant and nonprofit corporation, is a homeowners' association whose membership consists of all homeowners in Glenbrook Hills. Others named as defendants were the officers and directors of Brea Glenbrook Club at the time the complaint was filed and, as a class, the remaining homeowners in the subdivision.

Every lot in Glenbrook Hills is subject to recorded covenants, conditions and restrictions. Each deed enumerates the various restrictions and affirmative burdens imposed upon the homeowners. They are defined in a document entitled "Declaration of Restrictions" which was originally recorded in Orange County on September 7, 1966, and has now been amended five times. Pursuant to the terms of these covenants, conditions and restrictions, all lot owners in Glenbrook Hills are required to be members of Brea Glenbrook Club and to pay membership dues and assessments in amounts determined by the directors of the

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

club. Membership in the club cannot be severed from the ownership of any parcel in the development and an owner cannot avoid liability for fees by nonutilization of the club's facilities. The club has the power to enforce collection of dues and assessments by placing liens on the property of delinquent members and bringing suit against them.

The club owns and operates a recreational area located on an individual parcel of land within the Glenbrook Hills subdivision and consisting primarily of a clubhouse, swimming pool and grounds. All fees paid by the homeowners are used for the care, maintenance and support of the Brea Glenbrook Club. Although it has not yet done so, the club is invested with the authority to charge admission for the use of the recreational area.

Any member of Brea Glenbrook Club who is more than three months delinquent in the payment of his dues and assessments is denied access to the club's facilities and is also deprived of voting privileges at any membership meetings.

Plaintiffs filed an action seeking a declaration pursuant to section 1060 of the Code of Civil Procedure that mandatory membership in Brea Glenbrook Club constituted an illegal cloud on the title of their respective properties. In effect, plaintiffs requested that the membership requirement be abolished on the ground that it was not a covenant running with the land. Plaintiffs also sought declaratory relief to the effect that the club had illegally increased its membership dues in 1971 and again in 1972.

After a one-day trial, the court determined that mandatory membership in the homeowners' association was a valid and enforceable covenant running with the land. The trial court also decided that the dues increases were in accordance with the bylaws of Brea Glenbrook Club and therefore within the authority of the directors of such club. This appeal ensued.

### Discussion and Disposition

Plaintiffs' principal contention on appeal is that mandatory membership in this homeowners' club is not a proper covenant, condition or restriction running with the land and thus is unenforceable.

A covenant runs with the land when it is appurtenant to the estate granted and passes with it, ". . . so as to bind the assigns of the covenantor and to vest in the assigns of the covenantee, in the same manner as if they had personally entered into them." (Civ. Code, § 1460.) The only covenants that run with the land are those specified in or allowed by statute. (Civ. Code, § 1461.) "Every covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land." (Civ. Code, § 1462.)

■ The primary characteristic of a covenant running with the land is that both liability upon it and enforceability of it pass with the transfer of the estate. The benefits or burdens pass by implication of law rather than under principles of contract. ■ However, if the promise is merely a "personal covenant"—one not fulfilling the requisites of a covenant running with the land—it is enforceable at law only against the original parties thereto. (*Berryman* v. *Hotel Savoy Company,* 160 Cal. 559, 573 [117 P. 677].)

Under the facts of the instant controversy, the question for decision is whether the burden of mandatory membership imposed upon the homeowners touches and concerns the land.[1] This was the requirement at common law first enunciated in *Spencer's Case,* 5 Co.Rep. 16a [77 Eng.Rep. 72]. ■ Simply stated, the covenant ". . . must affect the parties as owners of particular estates in land, or must relate to the *use of land.*" (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 388, p. 2080; see also Powell on Real Property (Abridged ed., 1968), § 675, pp. 717-718.)

Section 1468 of the Civil Code embodies the common law requirements by specifically stating that a covenant running with the land must relate ". . . to the use, repair, maintenance or improvement of . . . such land or some part thereof . . . ." (See Note, 9 Santa Clara Law. 285, 294.) ■ It would seem obvious that the covenant involved in this case does touch and concern the land, since it related ". . . to the use, repair, maintenance or improvement of . . ." that portion of land used in common by the property owners within this tract, to wit, that parcel occupied by the facilities of Brea Glenbrook Club.

[1] The other elements essential to a covenant running with the land are unmistakably present. (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, §§ 387-392, pp. 2079-2084.)

"In their interpretation of this rule [Civ. Code, § 1462, *supra*], the courts have uniformly adopted the view that if the covenant tends to enhance or increase the value of the land, it is a direct benefit within the meaning of the code and therefore runs with the land." (16 Cal.Jur.3d Supp., § 14, p. 24.)

Manifestly, the maintenance of a well-kept clubhouse, recreational area and swimming pool in this tract enhanced the value of each home therein. In the Southern California area it would be reasonable for a court to take judicial notice of the obvious fact that there are a great many swimming pools attached to private residences. The availability of such a facility at the Brea Glenbrook Club would make it unnecessary for any homeowner to invest a considerable amount of money in a swimming pool for the use of his family. Also, it would be a fair deduction from the agreed statement of facts that the availability of the clubhouse and grounds provided opportunities for playground activities and other forms of family and community recreation within the Glenbrook Hills project. Thus, it would seem that the so-called "burden" of maintaining membership in this association would in reality be an asset to each and every property owner in the use of his land.

Since we have been unable to find any case involving the same type of covenant in California,[2] we have directed our attention to other jurisdictions which have held that covenants somewhat similar to the one at hand were enforceable. In *Neponsit Property Owners' Ass'n* v. *Emigrant I. Sav. Bank,* 278 N.Y. 248 [15 N.E.2d 793, 118 A.L.R. 973], the covenant, after providing for the collection of a certain amount of money per lot, specified that the funds would be " 'devoted to the maintenance of the roads, paths, parks, beach, sewers and . . . other public purposes . . . .' " (*Id.,* at p. 254 [15 N.E.2d at p. 795].) The covenant in *Lawrence Park Realty Co.* v. *Crichton,* 218 App.Div. 374 [218 N.Y.S. 278], required payment of a proportionate share of maintenance costs for roads, walks, and sewers. In *Kennilwood Owners Ass'n* v. *Jaybro R. & D. Co.,* 156 Misc. 604 [281 N.Y.S. 541], the covenant required annual payments for maintenance of streets, street lighting, fire protection, waterways and property used in common. *Rodruck* v. *Sand Point Maintenance Commission,* 48 Wn.2d 565 [295 P.2d 714], also upheld a covenant requiring payment for maintenance of streets within the subdivision.

---

[2]Apparently this covenant is not new in the real estate world because we find the following comment in California Real Estate Sales Transactions (Cont.Ed.Bar 1967) at page 207: "Frequently, participation . . . in a community recreation center, with its attendant financial responsibility, is founded on some provision in recorded restrictions."

Considering all of these factors, we conclude that the restriction of mandatory membership in the homeowners' association was a direct and mutual benefit to all parcels of land located within "Glenbrook Hills." Therefore, we hold that the membership requirement is valid and enforceable as a covenant running with the land and does not contravene any statutory or constitutional provision.

■ As an alternative ground for sustaining the decision of the trial judge, we find merit in respondents' contention that the mandatory membership restriction created an equitable servitude which would be enforced in equity even if this covenant did not fulfill the technical requirements for a covenant running with the land. (See 2 Ogden's Rev. Cal. Real Property Law (Cont.Ed.Bar 1975) § 23.12, p. 1145.) Our Supreme Court has emphasized equitable enforcement in holding that a covenant by the lessee in an oil and gas lease to keep the property free from liens due to operations on the property demised was binding upon the assignee of the lessee, even though the indebtedness arose prior to the assignment. (*Richardson* v. *Callahan,* 213 Cal. 683 [3 P.2d 927].) The opinion states at page 686: "The marked tendency of our decisions seems to be to disregard the question of whether the covenant does or does not run with the land and to place the conclusion upon the broad ground that the assignee took with knowledge of the covenant and it was of such a nature that when the intention of the parties coupled with the result of a failure to enforce it was considered, equity could not in conscience withhold relief."

The judgment is affirmed.

Gardner, P. J., and Kaufman, J., concurred.