Dr. Kalman LOW; Russell S. Asnes, M.D.; Terrence R. Conway; Richard L. Lehman; Dominick & Lynn Gadaleta; and Daniel R. Schwarzwalder, Plaintiffs,

v.

EQUITY PROGRAMS, LTD.; Allstate Property Investors Corporation; Equity Securities Realty Corporation; APR Investment Corporation; Equity Realty Management Corporation; National Realty Leasing Corporation; Harold S. Pomeranz; Andrew H. Lynette; Richard H. Diller; Richard H. Dinar; and Richard H. Dinar, C.P.M., Inc., Defendants.

No. 88 Civ. 7056 (JES).

United States District Court, S.D. New York.

April 19, 1995.

---

Beigel & Sandler, Ltd., New York City
(Karl J. Stoecker, of counsel).

Anderson Kill Olick & Oshinsky, P.C., New York City (Martin F. Brecker, Kim Koopersmith, Tracy E. Makow, of counsel).

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiffs, investors in certain limited partnerships organized and managed by the defendants, assert claims for relief based upon section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. 240.10b–5, sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77l(2), 77q(a), and pendent state law claims for common law fraud, negligence and breach of fiduciary duties. Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, defendants' motion is granted.

## BACKGROUND

The question presented by this motion is whether an action for securities fraud will lie where, as here, fee payments to general partners made from investors' capital contributions to limited partnerships, though fully disclosed to the public and the investors, are not disclosed to appraisers hired to appraise the value of the fee simple interest in properties owned by the partnerships.

Defendants Equity Programs, Ltd. ("Equity"), Allstate Property Investors Corporation ("Allstate"), Equity Securities Realty Corporation ("Equity Security"), APR Investment Corporation ("APR"), Equity Realty Management Corporation ("Equity Management"), National Realty Leasing Corporation ("National Realty"), and Defendant Richard H. Dinar, C.P.M., Inc. ("Dinar, Inc.") are corporations controlled by individual defendants Harold S. Pomeranz, Andrew H. Lynette, Richard H. Diller, and Richard H. Dinar (collectively "defendants"). *See* Second Amended Complaint ("Compl."), ¶ 4(a).[1] Defendants were involved in the syndication and subsequent. operation of the three limited partnerships at issue in this case, the Sun Chase Associates, L.P., the Courtyard Manor Associates, L.P. and the Garden Manor Associates, L.P. *See* Compl., ¶ 4(b); Defendants' Statement pursuant to Local Civil Rule 3(g) of the United States District Courts for the Southern and Eastern Districts of New York ("Defs. 3(g) Statement"), ¶¶ 1–2.[2]

Defendants formed those limited partnerships for the purpose of acquiring title to and owning and operating apartment buildings in Texas and Arizona. The general mechanics of those ventures were as follows: for a small amount of cash and a note, an affiliate of defendants purchased property which was soon thereafter transferred to one of the partnerships. In connection with those transactions, the partnerships entered into various agreements to pay to the original seller a restrictive covenant fee and, to the general partner and various affiliated defendants, certain other fees out of the investors' capital contributions. These other fees included a General Partners' fee, an Administrative fee, a Real Estate Consulting fee, a Financial Consulting fee, a Transitional Management fee (only as to the Sun Chase and Garden Manor partnerships), and a Management fee (collectively the "management fees"). *See* Compl., ¶ 7(a); Affidavit of Andrew H. Lynette sworn to October 19, 1992 ("Lynette II Aff."), Exs. A—T.

In or about 1985, plaintiffs Dr. Kalman Low, Dr. Russell S. Asnes, Terrence R. Conway, Richard L. Lehman, Dominick and Lynn Gadaleta, and Daniel R. Schwarzwalder

---

1. Although originally named plaintiffs in the caption of the complaint, all claims of plaintiffs Bruce A. Butzel, Harish and Nayana Parekh, Jeffrey A. Krauss, Ph.D., and Lawrence Davidson, M.D., (and some claims of Dr. Kalman Low), were dismissed on statute of limitations grounds. *See* Defs. 3(g) Statement, Ex. C (Order dated August 1, 1991). Those persons have been removed from the caption. *Id.* Accordingly, defendants Madison Management Corporation, Madison Consultants, Ltd., Aaron Goodman, Alfred Heinson, Benjamin Tabs, and Edwin F. Wolfman were dismissed from the case and similarly removed from the caption. *Id.*

2. Except where otherwise stated, all references to defendants' 3(g) Statement refer facts as to which plaintiffs have conceded no genuine issue remains for trial. *See* Plaintiffs' Counterstatement pursuant to Civil Rule 3(g) ("Pls. 3(g) Statement").

(collectively "plaintiffs"), each invested in one or more of the three limited partnerships. Plaintiffs allege that each partnership's basic investment objective was (1) to preserve each limited partner's initial investment, (2) to provide capital gains through potential appreciation, (3) to provide cash distributions from operations, (4) to increase the value of each limited partners' equity through full amortization of mortgage loans, and (5) to provide ancillary tax benefits. *See* Compl., ¶ 8.

To induce these investments in the limited partnerships, defendants prepared offering materials consisting of Private Placement Memoranda for the sale of limited partnership interests in each of the three limited partnerships (the "PPMs") and distributed them to prospective investors. Compl., ¶¶ 9–10; Affidavit of Andrew H. Lynette sworn to May 27 19, 1992 ("Lynette Aff."), Exs. F, G, I. Those materials disclosed the amount of each of the fees and contained appraisals by two appraisers from the Merrill Lynch Real Estate Advisory and Appraisal Group who had been hired by defendants to determine the fair market value of each of the properties owned by the limited partnerships. Lynette Aff., Exs. F, G, I. The management fees were not disclosed to either appraiser.

The two appraisers, James A. Runnels ("Runnels") and James H. McColgan ("McColgan"), determined the market value of the properties by three different appraisal methods: the cost approach, the market approach, and the income approach. *See* Affidavit of Brian M. Greenman sworn to May 12, 1992 ("Greenman Aff."), ¶ 4; Defs. 3(g) Statement, ¶ 12. The appraisers selected the income approach as the best measure of each property's actual value and utilizing, as the best form of that approach, the Discounted Cash Flow Method. Greenman Aff., ¶ 4. Under the Discount Cash Flow Method, and under the income approach in general, an appraiser will prepare income projections over a period of time and subtract out either known or estimated expenses associated with the property being appraised. *Id.;* Affidavit of Stanley H. Freundlich sworn to May 28, 1992 ("Freundlich Aff."), ¶ 4. Specifically, the appraisers' discounted cash flow model

was based on an eleven-year projection of each property's income and expenses to calculate its net income. They then subjected that calculation to a present value analysis to arrive at the properties' market values. Plaintiffs allege that defendants' failure to reveal the fees paid to the general partners caused the appraisers to overstate the value of real estate since the appraised value of the property would have been reduced had those costs been included. Compl., ¶¶ 20–24. The appraisers are not defendants in this action.

On or about October 4, 1988, plaintiffs filed their original Complaint, and later the instant Second Amended Complaint, claiming that the appraisals were inaccurate, that the management fees and restrictive covenant fees paid were unreasonable, and that the investment therefore lacked potential to be a fruitful one. Compl., ¶¶ 28–30. Specifically, plaintiffs allege that defendants misrepresented: (1) the accuracy of the PPMs and the appraisals, (2) the reasonableness of and the need for both the management fee and the restrictive covenant fee agreements, and (3) that there was a reasonable possibility for investors to experience economic gain from this investment. Compl., ¶¶ 31, 33. Plaintiffs further allege that defendants' omissions include: (1) that the restrictive covenant served no legitimate purpose, (2) that the restrictive covenant fee and the management fees were inflated and designed solely to generate substantial profit for the defendants and the sellers, not the partnerships, and (3) that the appraisal value of the property was overinflated because it failed to consider the relevant fees and expenses in its calculations. Compl., ¶ 34.

In 1989, defendants moved to dismiss plaintiffs' Second Amended Complaint. Although the Court recognized that "some allegations of the complaint . . . might not withstand legal analysis," in view of the more than adequate disclosure made in the PPMs of the nature and amount of the fees at issue, Transcript of Oral Argument dated February 1, 1991 ("Feb. 1, 1991 Tr.") at 10, the Court denied the motion without prejudice to being renewed after the trial of the arguably sufficient claims, stating:

When the time comes that the case is tried, [those frivolous issues] will probably not be sent to the jury if there is no evidence to support them. But I think there is a colorable theory here that at least the real estate appraisals were inflated by information which might have been disclosed to others but not to the people who gave the appraisals.... That is why I can't grant [the motion].

*Id.* Therefore, by Order dated April 11, 1991, the Court ordered that the parties conduct discovery limited to this sole remaining issue, *i.e.,* whether the undisclosed fees, if known to the appraisers, would have impacted their appraisal of the market value of the properties.

At the appraisers' depositions, where they were subject to cross-examination, and later in affidavits, McColgan and Runnels testified that their conclusions would not have been affected had they known of the fees at the time they performed their appraisals since such fees were expenses of the partnerships and therefore would not have affected the value of a fee simple interest in real property. *See* Defs. 3(g) Statement, Exs. D, E. That viewpoint is supported by "The Appraisal of Real Estate" (9th Edition), a treatise on the subject of appraisals published by the American Institute of Real Estate Appraisers, *see* Freundlich Aff., Ex. C, and by the affidavit and opinion of defendants' expert Stanley H. Freundlich, a certified public accountant and tax attorney. *Id.* at 10.

Freundlich stated, consistent with viewpoints presented by McColgan and Runnels, that appraisals made pursuant to the income approach should not include either non-recurring expenses or "special corporation costs" as expenses to reduce the total income on which the appraisal is based since such expenses are not "periodic expenditures necessary to maintain the real property and continue the production of effective gross income," but are expenditures made out of the capital of the business entity's structure to cover its business costs. Freundlich Aff. at 10; *see also* McColgan Aff., ¶ 10; Runnels Aff., ¶ 11. It was his conclusion, therefore, that the non-disclosure of the fees was not

germane to an accurate evaluation of the value of the properties.

In view of this testimony, defendants moved for summary judgment dismissing the Second Amended Complaint. By Order dated July 6, 1992, the Court denied this motion for summary judgment because management fees, even if not recurring expenses of the partnership might as a practical matter arguably have affected the marketability of the properties. *See* Transcript of Oral Argument dated June 26, 1992 ("June 26, 1992 Tr."), at 2–5. The following colloquy took place at Oral Argument:

THE COURT: I think I am very clear.

I want to be satisfied that under no stretch of the circumstances or business reality can the property value, as a practical matter, be impaired by the existence of these management costs obligations.

If I am satisfied that that is true, there is no issue of fact to be tried by a jury and this case is ripe for summary judgment....

If there are any set of circumstances which a rational fact finder can find that as a practical matter the property value can be impaired by the existence of these obligations, the case will be tried and the jury will resolve that issue....

MR. BRECKER: Will the terms of the contract, your Honor, determine whether by any stretch of the imagination these contracts can be a charge on the land?

THE COURT: It is going to depend upon whether or not as a practical matter the alienation of the property at its full value is impacted by the existence of these management fee obligations. That is what we are dealing with; business reality, not technicalities, not legalities....

On the motion you have now made you have not demonstrated to me that no rational fact finder could find that that value could not be impacted which is why I am denying your motion....

Go back and do the homework you should have done in connection with this motion and let me know whether or not there is any factual basis for any claim that the ability to dispose of this property at its

full value can in any way be affected by any obligation to pay the management cost. If there is no document either by way of a mortgage or contractual provision or some legally enforceable basis upon which the property value is practically impaired, you are entitled to have the summary judgment motion granted.

*Id.*

Subsequently, the defendants renewed their motion for summary judgment.

### DISCUSSION

█ Summary judgment may be granted only where "there is no genuine issue as to any material fact" and a party is "entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This Court is not to weigh evidence and decide the truth, but rather to determine whether or not there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the movant initially bears the burden of showing that there are no genuine issues of material fact, once such a showing is made, the party opposing a properly supported motion must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514. Summary judgment is warranted where, "after adequate time for discovery ... [the nonmoving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To establish a genuine issue of fact, the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts"; it must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Rule 56(e)) (emphasis omitted).

█ In this case, there is no evidence supporting any rational inference that the failure to disclose the management fee to the appraisers could have materially impacted the appraised value of the properties at issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56. None of the title reports relating to any of the properties reflects any lien, mortgage, judgment or other encumbrance in favor of any entity entitled to receive any of those management fees. *See* Lynette II Aff., Exs. X, Y. Although the plaintiffs continue to conclusorily deny that none of the Fee Agreements creates an obligation which constitutes a charge on the real estate binding on a subsequent purchaser, *see* Response to Defendants' Request for Admission of Facts, and have refused to admit that they have no knowledge of any agreement, instrument or document that creates an obligation in favor of any of the entities entitled to receive fees, *id.,* they have failed to refer to or produce any contract that would compel a subsequent purchaser of any of the properties to assume the liabilities of the seller with respect to the alleged inflated costs. Nor did plaintiffs even respond to defendants follow-up request seeking the factual bases for those conclusory denials.

Moreover, under any possibly applicable substantive law, none of these fee obligations runs with the land and binds subsequent purchasers. Arizona, Texas, New Jersey and New York, the jurisdictions in which the property is located and the law of which was chosen in the numerous fee agreements or PPMs as the applicable law, all require that the covenants touch and concern the land and that there be privity of estate between the covenanting parties as a prerequisite to their being binding on subsequent purchasers. *See Smith v. Second Church of Christ, Scientist, Phoenix, Ariz.,* 87 Ariz. 400, 351 P.2d 1104, 1115 (1960); *HSL Linda Gardens Properties, Ltd. v. Seymour,* 163 Ariz. 396, 788 P.2d 129, 130 (Ct.App.1990); *Inwood N. Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex.1987); *Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 910–11 (S.Ct.Tex.1982); *Clear Lake Apartments Inc. v. Clear Lake Utils. Co.,* 537 S.W.2d 48, 51 (Tex.Civ.App.1976); *Aronsohn v. Mandara,* 98 N.J. 92, 484 A.2d 675, 679 n. 4 (1984); *Neponsit Property Owners' Ass'n,*

*Inc. v. Emigrant Indus. Sav. Bank,* 278 N.Y. 248, 254–55, 15 N.E.2d 793, *reh'g denied,* 278 N.Y. 704, 16 N.E.2d 852 (1938); *Newcomb v. Congdon,* 160 A.D.2d 1192, 555 N.Y.S.2d 202, 204 (3d Dep't 1990).

Here, the alleged management obligations clearly do not touch the land itself nor is there any privity of estate between the promisors and the promisees with respect to these obligations. The undisputed facts elicited in connection with the summary judgment motion reflect that the fee expenses at issue are expenses of the partnerships and not of the properties and have been levied pursuant to fee agreements executed between the partnerships and their agents, not the grantors and grantees of the properties. Therefore, as a matter of law, the appraised value of the properties could not be impacted by the so-called inflated fees. In sum, these fee obligations do not constitute covenants that run with the land, and do not bind future purchasers of the property, and thus cannot conceivably affect the market value of the property itself.

■ Furthermore, plaintiffs' reference to the conclusory affidavit of Brian M. Greenman, submitted in opposition to the earlier motion for summary judgment, which states only that such fees should have lowered the appraised values of the properties, is insufficient to satisfy plaintiffs' burden of demonstrating more than some metaphysical doubt that the failure to disclose the fees to the appraisers materially impacted the appraised value of the properties. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56.

Quite aside from the fact that Brian M. Greenman is an appraiser of businesses, not properties, and, unlike either McColgan or Runnels, is not a member of the Appraisal Institute, "the institute that seeks to qualify persons engaged in the field of real estate appraisals," Affidavit of Martin F. Brecker sworn to May 27, 1992 ("Brecker Aff."), ¶ 6,[3] Greenman's conclusory assertion that the value of the properties would be affected by defendants' non-disclosure of the management fees is factually unsupported. It follows that that affidavit is a legally insufficient basis upon which to raise a genuine material issue of fact in the face of uncontroverted evidence that any future buyers of the properties would not be obligated to pay the fees. *See Merit Motors, Inc. v. Chrysler Corp.,* 569 F.2d 666, 672–73 (D.C.Cir.1977); *accord Pennsylvania Dental Assn. v. Medical Serv. Assn. of Pa.,* 745 F.2d 248, 262 (3rd Cir. 1984); *United States v. Various Slot Machines on Guam,* 658 F.2d 697, 700–701 (9th Cir.1981). *See Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952) (Hand, J.) ("[A]lthough it is therefore true that in strict theory a party ... might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him."). This is especially true since plaintiffs have not submitted any evidence supporting a rational inference that the value of the property could, as a matter of business reality, be impaired, in the absence of covenant binding on potential purchasers of the property.[4] Put another way, since subsequent

3. Greenman is a member of the Institute of *Business* Appraisers, Inc. and a member of the board of directors of the New York Chapter of the American Society of Appraisers qualified in *business* appraisals with experience in real estate investments. *See* Greenman Aff., ¶ 1 (emphasis added). In two other lawsuits based on real estate investments, Greenman supplied plaintiffs' counsel, the Beigel & Sandler law firm, with affidavits which attacked the methodology of real estate appraisals submitted by their adversaries. In each case, Greenman's affidavit appears to have been the only support offered to challenge the appraisal of the respective investment property and summary judgment was entered against his clients. *See Kushner v. DBG Property Investors, Inc.,* 793 F.Supp. 1161 (S.D.N.Y.1992); *Seidman v. McDonald,* 90–2362, 1991 WL 46711,

1991 U.S.App. LEXIS 5610 (4th Cir. April 8, 1991) (annexed to Brecker Aff., Ex. B).

4. At oral argument, after counsel could not present any argument why the undisclosed fees would have affected the appraisal of the value of the properties, and after the Court indicated that summary judgment was appropriate in this case, counsel requested leave to file a supplemental affidavit. In view of the extensive motion practice in this case, and the Court's statements on the record framing the remaining issue to be addressed in supplemental papers, plaintiffs' failure to submit a timely affidavit cannot be excused. The Court therefore declines to permit counsel to delay this case any longer by submitting such an affidavit at the very last minute,

purchasers would be under no obligation to pay these allegedly inflated fees, these fees could not conceivably affect the price that purchasers would be willing to pay for these properties.

 Plaintiffs' argument that the PPMs affirmatively misrepresented that those fees were reasonable is simply untrue. That statement was not made in any of the PPMs. What is stated, and what plaintiffs concede to be true, is that *"[t]he General Partner has represented to Counsel that these fees are ordinary and necessary business expenses, that they occur on a regular basis in transactions of this type and that they are reasonable in amount." See* Lynette Aff., Ex. F at 108–09, Ex. G at 92–93, Ex. I at 105–06 (emphasis added). It follows that this concededly true statement cannot be the basis for a claim of securities fraud. *See* 17 C.F.R. § 240.10b–5; *cf. Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1096, 111 S.Ct. 2749, 2760, 115 L.Ed.2d 929 (1991).[5] Equally untenable is plaintiffs' claim that defendants' failure to disclose to investors that the fees were unreasonable was a material omission in view of the full disclosure to the public that was made with respect to the amount and nature of these fees. Indeed, it was that disclosure that caused the Court to limit discovery to the issue of whether non-disclosure to the *appraisers,* as opposed to the public, might have affected the value of the properties themselves.

In sum, plaintiffs' complete failure of proof on the issue of whether the fees could have affected the market values of the properties, mandates summary judgment dismissing the Second Amended Complaint. *See Celotex Corp. v. Catrett, supra,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553. In view of that dismissal prior to trial, it would be an improvident use of judicial resources to continue to entertain plaintiffs' pendent state law claims. These

claims are therefore dismissed without prejudice for lack of subject matter jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

## CONCLUSION

For the reasons given above, defendants motion for summary judgment dismissing the Second Amended Complaint is granted. The Clerk of Court is directed to close the above-captioned action.

It is **SO ORDERED.**

---

especially since plaintiff has offered no colorable or indeed any reason for not having done so sooner. *See* Fed.R.Civ.P. 6(d), 56(c). *Cf. Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 893–98, 110 S.Ct. 3177, 3191–93, 111 L.Ed.2d 695 (1990).

**5.** Although the Court in *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991), was concerned with section

14(a), not section 10(b), of the Securities Exchange Act, the case is instructive since Rule 10b–5, applicable here, and Rule 14a–9, applicable in that case, both require a false statement or material omission. *Compare* 17 C.F.R. § 240.10b–5 *with* 17 C.F.R. § 240.14a–9. *See Mayer v. Mylod,* 988 F.2d 635, 638 n. 2 (6th Cir.1993).