WERDEGAR, J., Concurring.
Can the developer of a condominium project unilaterally impose arbitration on the condominium’s homeowners association by recording a mandatory arbitration clause for construction-related claims at or before the association’s inception? Because the Legislature has elected to permit developers to do so, I agree with the majority that a developer can and that the arbitration clause at issue here is enforceable. Because I think the clause’s validity rests on narrower grounds than those invoked by the majority, I write separately.
I.
Pinnacle Market Development (US), LLC (Pinnacle Development), built a condominium project. As required under the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.; Davis-Stirling Act),[1] it recorded a declaration containing easements, covenants, and restrictions on use of the property (see §§ 1352, subd. (a), 1353). Included among these covenants and restrictions, Pinnacle Development inserted a clause that compelled arbitration of one specific type of claim—constmction disputes—with the homeowners association, the Pinnacle Museum Tower Association (the Homeowners Association), and individual homeowners each bound as a condition of accepting an interest in the property.
The Homeowners Association evidently was incorporated around the same time the declaration was recorded. That the Homeowners Association had no meaningful independent existence at the time the declaration and arbitration clause were first recorded, and that the clause was drafted unilaterally by Pinnacle Development, are undisputed.
*252 The initial question for us is whether the arbitration clause is binding on the Homeowners Association. In concluding that it is, the majority never clearly states whether the grounds for enforcement lie in contract or real property law. In my view, only real property law supports enforcement.
A.
Considered as contracts, the recorded declaration and the arbitration clause are adhesive vis-a-vis individual homeowners, but adhesive contracts can still be enforced. (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 113 [99 Cal.Rptr.2d 745, 6 P.3d 669].) Individual homeowners can elect to buy property subject to the recorded declaration and the arbitration clause, or not; some semblance of a choice is still present, and courts have properly found such individual owners bound as a matter of contract law. (E.g., Villa Milano Homeowners Assn. v. II Davorge (2000) 84 Cal.App.4th 819, 824-826 [102 Cal.Rptr.2d 1].)
But the rationale that would make recorded covenants and restrictions contractually enforceable against individual owners does not extend to a homeowners association. Vis-a-vis such an association, the recorded declaration is more than adhesive; no opportunity for meaningful consent exists at all. A homeowners association cannot refuse to accept title to the development’s common areas or the responsibilities of management; once it comes into existence, it is automatically subject to whatever the developer has seen fit to insert in the declaration, without any opportunity to reject those terms. To treat this scenario as involving consent rather than compulsion is to disregard the realities of the situation. I thus agree with the Court of Appeal that the scenario here does not fit within traditional bilateral, or even unilateral, contract formation principles.
The majority states that we have in the past treated covenants in declarations as contractual (see maj. opn., ante, at p. 239, citing Nahrstedt v. Lakeside Village Condominium Assn. (1994) 8 Cal.4th 361, 380-381 [33 Cal.Rptr.2d 63, 878 P.2d 1275], and Frances T. v. Village Green Owners Assn. (1986) 42 Cal.3d 490, 512-513 [229 Cal.Rptr. 456, 723 P.2d 573]), thus implying that to do so here is unexceptional. In Nahrstedt, we applied contract interpretation principles to a recorded restriction; in Frances T, we assumed the truth of an individual owner’s allegation that covenants in a recorded declaration were part of a contract between her and her homeowners association. In neither case did we analyze whether contract formation principles, as applied to the terms of a recorded declaration, supported treating those terms as a binding contract between a developer and a homeowners association. Nor do any of the other cases the majority cites, ante, at page 240, articulate a rationale for treating the covenants, conditions, *253 and restrictions in a recorded declaration as a binding contract between a developer and a homeowners association. Indeed, the one case most clearly to conclude that the covenants in a declaration form a binding contract between a developer and a homeowners association expressly acknowledged that, unlike for individual owners, who have notice at the time of purchase of a declaration’s terms, the extant case law does “not provide an analytical framework for addressing the issue why the homeowners association, which makes no purchase, is also bound contractually.” {Villa Milano Homeowners Assn. v. II Davorge, supra, 84 Cal.App.4th at p. 825, fn. 4, italics added.)[2]
The majority suggests declarations should be enforced as contracts to protect the expectations of the individual owners who buy property in a given development. (E.g., maj. opn., ante, at p. 243 [“[W]e perceive no legitimate reason to frustrate the expectations of purchasers who choose to buy into a development where binding arbitration is the designated process for resolving such claims.”].) This emphasis on the supposed expectations and wishes of homeowners appears disingenuous. While owners may have agreed to the arbitration clause, they did so only in the context of an adhesive, take-it-or-leave-it transaction. That the presence of such a clause would play much, if any, of a favorable role in as momentous a decision as the choice of a home to purchase is not readily apparent.
Accordingly, to the extent the majority rests enforcement of the arbitration clause against the Homeowners Association on contract principles, I part company.
B.
That a covenant in a declaration is unenforceable as a contract is not dispositive if another ground for enforcement exists. Here, one does.
At common law, enforceable equitable servitudes and covenants running with the land were confined to restrictions that benefited or burdened land. (Citizens for Covenant Compliance v. Anderson (1995) 12 Cal.4th 345, 352-355 [47 Cal.Rptr.2d 898, 906 P.2d 1314].) The same holds true today; whether described as a covenant running with the land or an equitable servitude, a restriction enforceable under these doctrines and the statutes *254 embodying them must involve a restriction governing land use. (Nahrstedt v. Lakeside Village Condominium Assn., supra, 8 Cal.4th at p. 380 [“[E]quitable servitudes permit courts to enforce promises restricting land use when there is no privity of contract . . . .”]; Anthony v. Brea Glenbrook Club (1976) 58 Cal.App.3d 506, 510 [130 Cal.Rptr. 32] [“[T]he covenant ‘. . . must affect the parties as owners of particular estates in land, or must relate to the use of land.’ ”]; § 1461 [only those covenants specified by statute may “run with the land”]; § 1462 [“Every covenant contained in a grant of an estate in real property, which is made for the direct benefit of the property, or some part of it then in existence, runs with the land.”]; § 1468 [covenant enforceable as mnning with the land is one which is “for the benefit of the land”].)
However, the Legislature is free to abrogate these common law requirements if it sees fit. If the Davis-Stirling Act expands the universe of provisions enforceable as equitable servitudes beyond those that would qualify under the common law, that the arbitration clause might not be enforceable in contract or at common law as a covenant running with the land or an equitable servitude is immaterial: a provision that qualifies under the act may be enforced as a matter of statute.
Under the Davis-Stirling Act, “[t]he covenants and restrictions in [a] declaration shall be enforceable equitable servitudes . . . .” (§ 1354, subd. (a).) In Villa De Las Palmas Homeowners Assn. v. Terifaj (2004) 33 Cal.4th 73, 87 [14 Cal.Rptr.3d 67, 90 P.3d 1223], we considered and rejected a condominium owner’s argument that recorded covenants and restrictions “must meet the common law requirements of equitable servitudes” in order to be enforceable. We concluded that under section 1354, subdivision (a) recorded covenants and restrictions are either deemed enforceable equitable servitudes, whether or not they satisfy the common law requirements, or are enforceable in the same manner as equitable servitudes. We had no occasion to decide which interpretation was correct because “[e]ither reading precludes the conclusion that the Legislature intended to incorporate the technical requirements of equitable servitudes into the statutes.” (Terifaj, at p. 87.)
Terifaj establishes that the Davis-Stirling Act makes the covenants in a recorded declaration enforceable without regard to whether they satisfy common law requirements for covenants running with the land or equitable servitudes. Accordingly, irrespective of whether the arbitration clause before us does or does not satisfy the traditional requirements for equitable servitudes, the clause is enforceable as an equitable servitude, or in the same manner as an equitable servitude, as a matter of statute. (Villa De Las Palmas Homeowners Assn. v. Terifaj, supra, 33 Cal.4th at p. 87.)
*255 The majority reaches the same conclusion, but relies in heavy part on section 1353, subdivision (b), which authorizes a developer or homeowners to include in the declaration “any other matters [they] consider appropriate.” (See maj. opn., ante, at p. 242.) In contrast to the restrictions included pursuant to subdivision (a) of section 1353, however, it does not follow that any matter included under subdivision (b) thereby becomes an enforceable equitable servitude. Indeed, subdivision (a) gives examples of just the sort of extra matters a developer might elect to include that would be permitted by subdivision (b) but are nevertheless not equitable servitudes; subdivision (a) mandates inclusion of standard notices for all subdivisions in proximity to an airport or falling within a particular conservation district. (§ 1353, subd. (a)(1)—(3).) A developer might elect to include, under subdivision (b), similar notices of other circumstances that would affect the decision to purchase property, without such notices becoming equitable servitudes. Accordingly, I would rest enforcement of the arbitration clause on section 1353, subdivision (a) and section 1354, not on section 1353, subdivision (b).
II.
The question remains whether the arbitration clause, though facially enforceable against the Homeowners Association, is valid. Because the clause’s enforceability derives from statute, not contract law, I would conclude the limits on its validity also derive from statute, not contract law. I therefore would focus on whether the clause is reasonable as required by statute, not whether it is unconscionable and thus contractually unenforceable. (See § 1354, subd. (a) [“The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable . . . .”].) Under section 1354, covenants or restrictions in a declaration will “be enforced unless they are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit.” (Nahrstedt v. Lakeside Village Condominium Assn., supra, 8 Cal.4th at p. 382.)
The Homeowners Association bears the burden of establishing unreasonableness under section 1354. {Nahrstedt v. Lakeside Village Condominium Assn., supra, 8 Cal.4th at p. 380.) It has not sought to do so expressly, instead framing its argument against enforcement in terms of contract principles of procedural and substantive unconscionability. Even treating that argument as applying equally to the reasonableness requirement, i.e., as an argument that the arbitration clause is unconscionable, and thus against public policy and thus unreasonable, the Homeowners Association has not carried its burden.
*256 To be sure, the adoption of the arbitration clause has elements of procedural unconscionability. Contrary to the majority’s view, that the Davis-Stirling Act contemplates a developer will draft and record covenants and restrictions before a homeowners association has any realistic opportunity to consent does not mean any resulting procedural unconscionability is categorically excused. (See maj. opn., ante, at p. 247.) Nothing is to stop a developer from providing a homeowners association a meaningful opportunity, once it achieves independence, to ratify or reject covenants and restrictions touching on the developer’s interests. In the absence of such an opportunity, we should make clear that provisions inserted unilaterally for the developer’s benefit must receive careful scrutiny under section 1354 to prevent abuse of the unilateral drafting power required by the nature of common interest developments.
That said, the Homeowners Association has not shown in this case that the arbitration clause constitutes such an abuse. The Homeowners Association objects to a provision that each side shall bear its own costs and attorney fees, but I agree with the majority that nothing in that clause evidences substantive unconscionability. (See maj. opn., ante, at p. 249.) The Homeowners Association also raises the clause’s limited scope—construction claims—as proof of the lack of “ ‘a modicum of bilaterality’ ” we have in the past demanded. (Armendariz v. Foundation Health Psychcare Services, Inc., supra, 24 Cal.4th at p. 119.) An arbitration clause is not, however, required to sweep in every possible claim either of two parties might have against each other; bilaterality is satisfied if, for the particular transaction or transactions covered, each side must submit its possible claims to the arbitral forum. {Id. at p. 120.) As the majority holds- (maj. opn., ante, at pp. 248-249), an arbitration clause that covers all claims arising from construction of a development does not, because it excludes nonconstruction claims, offend public policy and become unenforceable under section 1354.
For these reasons, I concur in the judgment of the court.

 All further statutory references are to the Civil Code.

 Although Villa Milano acknowledged that existing precedent did not explain why a homeowners association should be bound as a matter of contract, because the parties did not raise this point the court simply assumed that a homeowners association exclusively represented individual owners’ interests and should not be permitted to avoid what the owners themselves could not avoid. (Villa Milano Homeowners Assn. v. II Davorge, supra, 84 Cal.App.4th at p. 825, fn. 4.) Not so; the Homeowners Association has its own separate property interests and its own potential claims.