FILED
03/14/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 1, 2023 Session

## DRIFTWOOD ESTATES PROPERTY OWNERS ASSOCIATION, INC. ET AL. v. JOHN SWEENEY ET AL.

**Appeal from the Circuit Court for Blount County**
**No. CE-30967        David Reed Duggan, Judge**

_____

**No. E2023-00463-COA-R3-CV**

_____

This case concerns whether a parcel of real property is subject to certain restrictions contained in a previously recorded declaration of restrictive covenants. In the proceedings below, the trial court dismissed a homeowner's association's lawsuit which sought to enforce the declaration's architectural review restrictions against the owners of the property. Upon review, we determine that the declaration did not expressly include the property at issue, nor was the property validly made subject to the restrictions within the declaration. Additionally, we reject the homeowner's association's arguments that the property was restricted to the terms of the declaration by way of an implied negative reciprocal easement or by waiver. Accordingly, we affirm the trial court's dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Melanie E. Davis and Joel Reeves, Maryville, Tennessee, for the appellants, Driftwood Estates Property Owners Association, Inc., and Driftwood Estates Advisory Committee.

Matthew A. Grossman and Richard E. Graves, Knoxville, Tennessee, for the appellees, John Sweeney and Cathy Sweeney.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

In 1997, the developer[1] of Driftwood Estates Subdivision ("the Developer") recorded the Declaration of Covenants, Restrictions and Easements of Driftwood Estates Subdivision, Unit 1 ("the Declaration"). Shortly thereafter, the Developer transferred a tract of land ("Tract 1") to Gary Hill and Wanda Hill by deed (hereinafter referred to as "the Hill Deed"). Though Tract 1 was not part of the specific lots defined as Unit 1 in the Declaration,[2] the Hill Deed stated that Tract 1 was "subject to" the Declaration, although, of note, it did not independently and expressly state the land was burdened by the architectural restrictions within the Declaration. Subsequently, and following a number of successive transfers involving Tract 1, a portion of Tract 1 ("the Property") was conveyed to the Appellees herein, John Sweeney and Cathy Sweeney ("the Sweeneys"). The Sweeneys' warranty deed also stated that the Property was "subject to" the Declaration.

By the time that the Sweeneys gained possession of the Property, the restrictions set out in the Declaration were being enforced by the Driftwood Estates Property Owners Association ("the HOA").[3] Prior to the present dispute between the Sweeneys and the HOA, the Sweeneys had submitted home plans to the HOA, for which approval was granted.

The Sweeneys subsequently submitted plans to install a prefabricated barn on the Property, which the HOA denied upon determining that the barn would violate the architectural restrictions in the Declaration. Despite receiving the HOA's denial, the Sweeneys installed the prefabricated barn, leading the HOA to file the present lawsuit seeking to enforce the Declaration. It prayed for, among other things, the entry of an order requiring the Sweeneys to "remove any unapproved structures on their Lot." In response, the Sweeneys filed a motion to dismiss, claiming that the Property was never bound by the architectural restrictions within the Declaration.

The trial court ultimately concluded that the express language of the Declaration required that an additional declaration be recorded in order to subject additional land, not specifically referenced in the original recorded declaration, to the restrictions set out in the Declaration and noted that "that wasn't done."

---

[1] The record reflects that Michael S. Gaddis and Amanda T. Gaddis developed Driftwood Estates Subdivision.

[2] Unit 1 in the Declaration specifically includes Lots 1-12, none of which includes the property at issue in this appeal.

[3] Driftwood Estates Advisory Committee, a committee of the HOA, is named as an additional party in this case. Although herein we refer singularly to the HOA for ease of reference, we observe that the HOA's brief is itself technically filed on behalf of both the HOA and the Driftwood Estates Advisory Committee.

In the course of its ruling, the trial court also rejected the HOA's argument that the Sweeneys waived their right to challenge the authority of the Declaration over their property because they previously sought approval from the HOA on certain other matters. The court reasoned that waiver is a defense, rather than a basis for a cause of action. In further addressing an argument from the HOA that the Sweeneys were prohibited from installing the barn by an implied negative reciprocal easement, the trial court stated as follows:

> With respect to negative reciprocal easements, they are implied easements or equitable servitudes, those are not favored in the law, and it requires intent that the restrictive covenant benefit the subject property. But, again, express restrictions govern.
>
> And here, the express written intent was that the restrictions would not apply unless the developer elected to record additional declarations. There's no dispute that that was not done. No such additional declarations were recorded.

The HOA now appeals from the trial court's decisions.

## ISSUES PRESENTED

As we construe its argument on appeal, the HOA has raised for our review whether the Property is expressly subject to the Declaration or otherwise subject to architectural restrictions contained in the Declaration by way of an implied negative reciprocal easement or waiver. In addition to the issues raised by the HOA, the Sweeneys have requested that this Court determine whether they should be awarded attorney's fees pursuant to Tennessee Code Annotated section 20-12-119.

## STANDARD OF REVIEW

Upon reviewing an order granting a motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure, we review the trial court's order de novo with no presumption of correctness, and we take all factual allegations presented by the non-movant as true. *Sellick v. Miller*, 301 S.W.3d 636, 639 (Tenn. Ct. App. 2009). Dismissal under Rule 12.02(6) of the Tennessee Rules of Civil Procedure "tests 'the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.'" *Nelson v. Myers*, 545 S.W.3d 428, 434 (Tenn. 2018) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). Consideration of documents subject to judicial notice and matters of public record does not convert a motion to dismiss into one for summary judgment. *See Stephens v. Home Depot U.S.A.*, 529 S.W.3d 63, 74 (Tenn. Ct.

App. 2016). The applicability and interpretation of a restrictive covenant is a question of law, which we review de novo with no presumption of correctness. *Lutzak v. Phoenix Am. Dev. Partners, L.P.*, No. M2015-02117-COA-R3-CV, 2017 WL 4685300, at *4 (Tenn. Ct. App. Oct. 18, 2017). "Tennessee law does not favor restrictive covenants, because they are in derogation of the rights of free use and enjoyment of property." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 474-75 (Tenn. 2012). As such, ambiguities are construed against the party seeking enforcement of the restrictive covenants. *Id*. at 481.

## DISCUSSION

*Express Restrictive Covenants*

We first turn to whether the Property was expressly burdened under the terms of the Declaration. Per Article II, Section I, of the Declaration, regarding "Existing Property," the Declaration states that Lots 1 through 12 are specifically burdened under the terms of the Declaration. Of note, the Property at issue is not a part of these enumerated lots. Article II, Section II, of the Declaration states:

> Additional land and/or Lots may become subject to this Declaration by recordation of additional declarations adopting and incorporating this Declaration by specific reference [in] the sole discretion of the Developer at the Developer's expense.

The HOA argues that the Developer followed this procedure by specifically referencing the Declaration in the Hill Deed and thereafter recording it. In response, the Sweeneys contend that the "subject to" language in the Hill Deed, in which the reference to the Declaration is stated, is insufficient to encumber the Property. Specifically, the Sweeneys cite to this Court's prior decision in *Winstead v. Byerley* to support their contention that something "more" is needed to properly encumber a property. *Winstead v. Byerley*, 1984 Tenn. App., LEXIS 2946, at *7 (Tenn. Ct. App. June 12, 1984). As we stated in that case:

> [W]e think the chancellor was correct in his reliance upon the annotation found in 84 A.L.R. 2d, page 780, entitled "Conveyance 'subject to' restrictions set forth in a recorded or other indicated instrument as imposing the restrictions on the land conveyed." The language quoted therefrom by the chancellor we find most apropos to the case under consideration:
>
> The general conclusion consequently to be drawn from the cases is that the fact that a conveyance is made "subject to" restrictions set forth in some other deed or instrument referred to will not, without more, make the restrictions applicable to the property conveyed if in fact the restrictions do not otherwise apply thereto.

- 4 -

*Id.*

This does not in any way make a "subject to" clause purposeless, a point which was articulated well by the Arizona Supreme Court in *Smith v. Second Church of Christ, Scientist, Phoenix*, 351 P.2d 1104 (Ariz. 1960), a case which is not only referenced in the annotation quoted to in *Winstead*, but one that is also relied upon by the Sweeneys in this appeal:

> Although such reference does not impose new restrictions on the land, it nonetheless serves a very necessary and desirable purpose for the grantor. When property is conveyed by warranty deeds, such as the Black deeds here, it is in the interest of the grantors that the conveyance be made subject to every restriction or encumbrance which not only does apply to such property but also may apply. The inclusion of restrictions in the 'subject to' clause may thus express a wise precaution on the part of the grantor (cf. Donahoe v. Turner, 204 Mass. 274, 90 N.E. 549). It would indeed be foolhardy for a grantor who is delivering a warranty deed to fail to refer to a restriction which may at some time in the future be held to apply to his property, merely to avoid the criticism of excess wordiness. Thus, it is not unusual for conveyances to be made subject to all recorded covenants, easements and restrictions, without specific enumeration, and it would be inappropriate, to say the least, to infer restrictions because it may subsequently turn out that none then applied to the property.

*Id.* at 1109.

Another decision from this Court, *Hughes v. New Life Development Corp.*, No. M2008-00290-COA-R3-CV, 2009 WL 400635 (Tenn. Ct. App. Feb. 17, 2009), is also illustrative of this general line of case law that holds that the presence of "subject to" language in a deed does not compel a conclusion that the referenced restrictions are, or become, binding upon the deeded property. As we stated in that case:

> The Homeowners assert that the warranty deed by which New Life acquired its property "expressly subjected all of the property transferred to New Life to the Restrictive Covenants." In support of this argument, Homeowners cite the following language in the deed: "Subject to restrictions in Deed Book 74M, Page 466, in the Register's Office of Grundy County, Tennessee, and Deed Book 316, Page 353, Register's Office of Franklin County, Tennessee." This is a reference to the Declaration. According to the Homeowners' reasoning, this language evidences an intent to subject all of the deeded property to the Restrictive Covenants. We cannot agree. The deed contains a list of easements and restrictions to which the property is subject.

- 5 -

> This does not mean that the easements and restrictions become applicable to the entirety of the deeded property. For example, a specific utility easement does not extend to the entire property. Similarly, the Restrictive Covenants apply according to the terms of the Declaration *only to the enumerated lots*. As New Life points out: "Plaintiffs' mistake is akin to interpreting a conveyance of property subject to a driveway easement to mean that the easement holder can park their car on the owner's front porch."

*Id.* at \*4 (emphasis added); *see also Lutzak*, 2017 WL 4685300, at \*5 (citing *Hughes* and stating that "interpreting the deeds as Defendants suggest would require us to disregard the clear provisions of the Declaration and extend the restrictive covenants beyond their express terms").

Beyond these concerns, we respectfully disagree with the HOA's contention that the Developer, through recordation of the Hill Deed, made the restrictions in the Declaration legally applicable to additional property. In reaching this conclusion, we are guided by the interplay of two principles. First, the Developer needed to comply with the Declaration's specified method for making additional property encumbered by the Declaration. *See Lutzak*, 2017 WL 4685300, at \*5-6 (concluding that a developer "must comply with the . . . language" of the method specified by the declaration to make additional property applicable to the declaration). Second, the Developer could only encumber additional property while the Developer still held title to it. Indeed, as to the latter of these propositions, it is well-established law in Tennessee that an individual must own title to real property to effectively restrict it, and conversely, somebody who does not hold title to a property cannot restrict its use by unilaterally recording restrictions for said property. *See Phillips v. Hatfield*, 624 S.W.3d 464, 475-76 (Tenn. 2021) *(*citing *Graham v. Edmondson*, No. 01A01-9809-CH-00482, 1999 WL 476466, at \*1 (Tenn. Ct. App. July 12, 1999)). Our Tennessee Supreme Court recently discussed the prohibition of such an action involving retroactive covenants, stating as follows:

> In this case, it is true that the language of the 1955 Restrictive Covenants purported to cover all lots in Sunnybrook Addition. However, the Chambers did not own lots one through four when they recorded the 1955 Restrictive Covenants. Therefore, the inescapable conclusion is that the Chambers lacked the authority to impose a servitude on the land that became the Defendant's property simply through recording the 1955 Restrictive Covenants.

*Id*.

With all of this in mind, it is apparent that the recordation of the Hill Deed could

not, as the HOA contends, evidence a valid action taken by the Developer to make the Property subject to the Declaration. There is no question that recordation of an additional declaration is part of the method specified by the Declaration for encumbering additional property, for as noted earlier, Article II, Section II, of the Declaration provides as such. Yet, the HOA's focus on the recordation of the Hill Deed, which the HOA positions as one of the contemplated "additional declarations" within the meaning of Article II, Section II, is ultimately misplaced in light of the second principle discussed above. Indeed, any other issues notwithstanding, recordation of the Hill Deed could not represent valid action taken by the Developer to encumber the Property because the Hill Deed evidences that it was signed by the Developer and Mr. Hill (for tax purposes) prior to its recordation. It is axiomatic that title to property transfers when the grantor delivers a signed deed to the grantee. *Woods v. Bonner*, 18 S.W. 67, 89 (Tenn. 1890). Because the Hill Deed was recorded bearing the signatures of the Developer and the grantee, signifying that title to the property had been conveyed *prior* to the recordation of the Hill Deed, it is clear that the Developer did not hold title when the Hill Deed was recorded so as to be able to validly restrict the Property at that time. After all, although the HOA argues that the Developer's recordation of the Hill Deed evidenced compliance with the Declaration's procedure for adding additional property, we note again that an individual must own title to real property to effectively restrict it. *See Phillips*, 624 S.W.3d at 475-76.

To recap, the instant Declaration requires "recordation of additional declarations adopting and incorporating this Declaration by specific reference [in] the sole discretion of the Developer and Developer's expense" in order to encumber additional land or lots, and to the extent that the HOA relies on the Hill Deed as evidence of such, we respectfully conclude that its position is without merit. Very simply, the Developer did not own the property *at the time of recordation* of the Hill Deed. The law is clear that restrictive covenants "are not favored because they interfere with the free enjoyment of property and *are to be strictly construed.*" *Hughes*, 2009 WL 400635, at *3 (emphasis added) (citing *Land Devs., Inc. v. Maxwell*, 537 S.W.2d 904, 918 (Tenn. 1976)). Because the Developer did not hold title to the Property at the moment the Hill Deed was recorded, the Developer could not encumber the property at that time.

Thus, in addition to the concerns surrounding the HOA's reliance on the "subject to" language from the Hill Deed, we cannot countenance the HOA's position that the recordation of the Hill Deed represented a valid action by the Developer to encumber the Property pursuant to the method specified in the Declaration. The proper procedure would have entailed the Developer's recordation of an additional declaration "adopting and incorporating" the Declaration "by specific reference" as contemplated by Article II, Section II, *before* divesting title to the Property. As a result, the architectural restrictions complained of by the HOA in this lawsuit were never made burdens on the Property prior to transfer of ownership of the Property by the Developer.

*Implied Negative Reciprocal Easement*

We next address whether an implied negative reciprocal easement ("INRE") exists to restrict the Property to the architectural restrictions contained in the Declaration. Grantees seeking equitable enforcement of an INRE must prove: (1) that the parties' title is derived from a common grantor; (2) that the common grantor intended the same restrictions to apply to all lots and be consistent with a general plan; (3) that the common grantor intended for the restrictive covenant to benefit the properties subject to the restrictions; and (4) that the grantees had actual or constructive knowledge of the restriction when they purchased their parcels. *See Ridley v. Haiman*, 47 S.W.2d 750, 755 (Tenn. 1932). Our case law has emphasized that this doctrine "is to be applied with great care." *Phillips*, 624 S.W.3d at 478 (internal quotations omitted) (citing *Land Devs., Inc. v. Maxwell*, 537 S.W.2d at 913). Concerning the proper application of an INRE, the Restatement explains that "[t]he implied-reciprocal-servitude doctrine comes into play only when the developer does not follow the practice of recording a declaration of servitudes applicable to the entire subdivision or other general-plan area." Restatement (Third) of Prop.: Servitudes § 2.14 (2000).

Our Tennessee Supreme Court also addressed this issue, citing the Restatement's explanation favorably:

> In fact, the Restatement suggests that the implied negative reciprocal easement doctrine ordinarily does not come into play when the developer records a declaration of servitudes applicable to an entire general-plan area. In such circumstances, there is no need to imply the existence of a general plan or the application of restrictions to land not otherwise mentioned in relevant documents—such as deeds—because the written declaration precisely evidences the intent to subject specific parcels of land to the servitudes pursuant to a general plan.

*Phillips*, 624 S.W.3d at 478 n.16 (citations omitted). Here, the Declaration is recorded and applies to specific lots. Because the Declaration "precisely evidences the intent to subject specific parcels of land" to the restriction therein, we conclude an INRE is inapplicable to the Property.

*Waiver*

As to the HOA's final argument, we assess whether the Sweeneys waived their right to contest the applicability of the Declaration's architectural restrictions. Specifically, the HOA claims that the Sweeneys have waived their right to oppose the restrictions at issue because they previously submitted plans regarding the Property to the HOA for approval. We disagree.

The Sweeneys' mere act of seeking approval in relation to the Property did not create a valid encumbrance upon their land. At most, this action shows that the Sweeneys were then under the erroneous belief that they were bound by the Declaration, or perhaps they were taking steps to match the design of the surrounding properties out of a personal desire to mirror the style. *See Hutton Team, LLC v. Ingles Markets, Inc.*, No. E2018-01372-COA-R3-CV, 2020 WL 528023 (Tenn. Ct. App. Jan. 31, 2020) (concluding that, although landlord had previously sought approval of development proposals from an anchor tenant, this practice did not create an ongoing obligation to do so). In any event, "waiver is defensive in nature," and the HOA's attempt to offensively assert it in its complaint cannot establish the existence of a restrictive covenant. *GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 201-02 (Tenn. Ct. App. 2010). Therefore, we conclude that waiver cannot operate to encumber the Property to the Declaration's restrictions.[4]

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

---

[4] The Sweeneys have also requested that we address whether they are entitled to attorney's fees pursuant to Tennessee Code Annotated section 20-12-119. We observe that "[a]n award of costs pursuant to this subsection (c) shall be made only after all appeals of the granting of the motion to dismiss have been exhausted and if the final outcome is the granting of the motion to dismiss. The award of costs and attorneys' fees pursuant to this section shall be stayed until a final decision which is not subject to appeal is rendered." Tenn. Code Ann. § 20-12-119(c)(3). In light of this provision, the trial court did not err by failing to make an award of attorney's fees incident to its prior disposition. When all avenues of appeal are exhausted and if the final outcome is the grant of the Sweeneys' motion to dismiss, the trial court shall then address the issue of attorney's fees. We have recently held that "Tennessee law does not provide that attorney's fees for appellate work are authorized under section 20-12-119(c) in the absence of an explicit provision providing for that relief." *First Cmty. Mortg., Inc. v. Appraisal Servs. Grp.*, 644 S.W.3d 354, 368 (Tenn. Ct. App. 2021).